*110
 
 Nash, C. J.
 

 This is an action to recover damages for an alleged slander, published through the electric telegraph, passing from Portsmouth, in Virginia, to Weldon, in this State. To connect the publication with the defendant, the plaintiff offerred, in evidence, the deposition of one Lundy, the telegraphic operator at Portsmouth, in which he makes the following-statement, to wit:
 

 “ ‘ PoktsMouth, Jan’y. 28, ’52.
 

 ‘ Me. FlaNAGAN, Weldon :
 

 ‘•Two men by name James Banks and a Mr. Beach has ran c off with two small negroes : please have them arrested : I
 
 (
 
 will be up to-morrow: be sure and stop them. I pay all { expenses. J. J. WILLIAMS.
 

 ‘ Answer immediately ’—
 

 was a copy of a telegraphic dispatch sent by him to Weldon, January 28, ’52.”
 

 The plaintiff further offered the deposition of one Campbell, telegraphic operator at Weldon, in which he stated that the same words as stated above by Lundy was a
 
 copy
 
 of a telegraphic dispatch received by him, Jan’y. 28, ’52, at Weldon. The evidence was objected to by the defendants on the ground that there was an original in the town of Portsmouth. The Court sustained the objection and rejected the evidence.
 

 The plaintiff is entitled to a
 
 venire de novo.
 
 The objection to the testimony, as stated in the case, was that there was an original of the telegraphic dispatch in the town of Portsmouth, and before the copy could be read, the absence of the original ought to be accounted for, and notice given to produce it.
 

 There is no evidence in the case that there was an original in the town of Portsmouth, aside from the statement made by the witness, Lundy : The Judge, however, assumed the fact to be so without any other evidence than the use of the word “ copy,” in the deposition.
 

 The word “ copy,” in general presumes ah original from which it is taken, as seems to have been the opinion of the presiding Judge ; but this is not always the sense in which it is used.
 
 Mr.
 
 Worcester, in giving the various uses of the
 
 *111
 
 word, says it sometimes means the original: as, for instance,
 
 “
 
 autograph,” which means the name of a person written by himself, or some of his own writing. This is called a copy ; but it has no original, and is therefore itself the original. So a pattern to write after is called a copy, as where a teacher writes a word, or a line, for his pupil to imitate, the writing is called a
 
 “
 
 copyor the master is said to set a copy. These definitions show that the word
 
 copy
 
 does.not necessarily imply that there is an original from which it is taken ; but that its meaning is to be gathered from the context of the writing in which it is used ; that is, the words which precede and follow it. Now let us advert to the language of the witness : He first gives us the message that was sent, and then says — “ was a copy of a telegraphic dispatch sent by him to "Weldon?’ What was the telegraphic dispatch ? The message sent by the wires of the telegraph and communicated to the operator at Weldon, by the dots and notches which were made on the paper at the telegraphic ofSce at Weldon. It will be remem*-bered there is no evidence in the case that the communication to Lundy, the operator at Portsmouth, was in writing: If, then, the telegraphic dispatch was the original, it follows, as a necessary consequence from its nature, that the word
 
 “
 
 copy,” as used by the witness, is not to be taken in its ordinary and common sense; and that the message as he sets it forth, is itself the original, existing no where but in his memory, or in the dots and marks made at the office in Weldon. That the word copy, as used by the witness Lundy, referred to the telegraphic dispatch, and not to any written or oral message he had received, is further shown by the fact that the witness, Campbell, uses the word “ copy,” in the same sense :
 
 “
 
 was a copy of a telegraphic dispatch received by him.” To him no communication, either in writing or orally, had been made except by the telegraph. If Lundy had been sending his own message, he might have used precisely the same language; in which case there could have been no original.
 

 But suppose it be granted that the paper upon which the telegraph made its dots, is to be considered the original of the
 
 *112
 
 message, which certainly it cannot be, and it had been produced to the Court and jury: of what use could it possibly have been ? It would have been necessary for Mr. Campbell to have attended and told the jury what the dots meant; but this would have been a translation ; a copy would have been as incomprehensible to the Court and jury as the original; for it would necessarily, in order to be a copy, have been in similar dots. When, therefore, the witness says that this is a copy of a telegraphic dispatch, he must be understood as saying, this message I sent by telegraph to Weldon : and his statement was not a copy, but the thing itself,, and as much an original as it could' be, unless the message had been communicated to Lundy in writing:. Of an oral communication there can be no copy..
 

 It is suggested, however, that the defendants ought not to be made to answer for words they never spoke: the telegraphic operator may mistake its language and send a message different from that he received. This may, and probably does occur : such things often take place in courts of justice, particularly on trials for words spoken, and where the defendant denies the speaking of them as stated by the witness. Yet if the jury believe the witness, though the latter may have sworn falsely, either inadvertently or corruptly, the defendant is made to pay damages for words he never uttered. It is but another proof of the imperfect operation of every system for eliciting truth, however perfect in itself, when its working is entrusted to imperfect beings. In the case of telegraphic dis-j>atchess the danger of error is, perhaps,..greater than in any other mode of communication;. more caution ought, therefore, to be taken by those who take advantage of them. They can,, if they choose,, always provide themselves with a check upon-, the workings of the wires, by preserving a properly attested" copy of the message they do- send. If they- fail to do this, it is their own fault. There is error in,-the ruling of the Judge, and there must be a,
 
 venire de novo.
 

 Rbk CuRiAM. Judgment reversed!