MANN v. THE S. C. & P. R. Co.

1. **Railroads**: EVIDENCE: DAMAGES. In an action against a railway company for damages on account of the death of the plaintiff's intestate, caused by the falling of a train of defendant's cars, on which he was employed, through a bridge, one of plaintiff's witnesses offered a piece of timber sawed from the piling of a part of the bridge which did not go down at the time of the accident: *Held*, that the evidence was not admissible to show that the timbers of the bridge which caused the accident were decayed and unsound, but that it was admisssible to show that the caps or timbers resting on the piling were not bolted thereto.

2. **Practice in the Supreme Court**: EXCEPTIONS. An exception to instructions between certain numbers given, and "to each of them," is sufficiently specific when the objection is made at the time the instructions are given.

*Appeal from Harrison District Court.*

FRIDAY, OCTOBER 5.

THE plaintiff, as administratrix of her deceased husband, seeks to recover the damages accruing to the estate of her said husband by reason of his death, caused by a train of defend-

ant falling through a bridge on defendant's road, on the night of August 24th, 1875. The deceased was the engineer in charge of said train. Whether the bridge was properly con-. structed, or had been kept in sufficient repair, or whether the deceased was guilty of contributory negligence, or whether the accident was inevitable, caused by reason of an unprecedented rain storm on the evening and night the accident occurred, whereby the supports of the bridge were washed out,. were all controverted questions. The jury found for the plaintiff, and judgment having been rendered on the verdict, defendant appeals.

*Joy & Wright*, for appellant.

*Mickle & Brown* and *H. M. Martin*, for appellee.

SEEVERS, J.—The accident by means of which the plaintiff's husband was killed is the same as in *Locke v. S. C. & P.* 1. RAILROADS: R. R. Co., ante, 109. The pleadings, evidence evidence: damages: and instructions, with a single exception, are substantially the same in both cases, and so are the grounds relied on to obtain a reversal. The decision in that case is fully applicable to this in every respect but one, which we will proceed to notice. It was an important and material question before the jury, whether at the time of the accident the timbers and piling on which the bridge rested were sound or decayed. The plaintiff claimed the latter. To maintain this issue one Aldrich was introduced as a witness and gave testimony tending to show that the piling was decayed at the time the accident occurred, and that a few days previous to the trial he had sawed off of one of said piling a piece of timber which he exhibited and in reference thereto testified: "There were three piling there; they were rotten also about the same as this," referring to the piece so sawed off. Whereupon the plaintiff offered the same in evidence. To which the defendant objected because the same was incompetent and for the reason the piece of the timber was taken from a portion of the bridge that did not go down at the time of the accident. The objections were overruled, the defendant excepted and the

piece of timber exhibited by the witness was introduced in evidence. The trial was about ten months after the accident.

With reference to said testimony, the court instructed the jury as follows: "If the jury find from the testimony that some of the piling that stood under the bridge upon the north bank is now somewhat decayed and defective, and was so decayed at the time of the accident, and if you further find that the said piling stood after the accident, and that the caps thereon were not removed or injured by the falling of the bridge; and if you further find that the decay upon said piling in no way contributed to the injury complained of or occasioned the falling of the bridge, in determining the cause of the accident you may disregard the apparent condition of the said piling, except in so far as its condition may throw some light upon the condition of the other piling under that portion of the bridge that did fall."

There was no evidence tending to show what was the condition as to soundness or decay at the time of the accident of the particular pile from which the piece introduced in evidence was taken as distinguished from any of the other piling. Nor was there any evidence tending to show that said pile was in the same condition as to soundness or decay when the piece was sawed off as it was at the time of the accident.

We apprehend that by no possibility could any evidence of the latter character have been introduced, for it is and must be self-evident that an exposure of nearly a year must have changed the character of the piling remaining near the bridge. Especially is this true when reference is had to the fact disclosed by the evidence that timber may be apparently sound on the outside and decayed and even rotten within. It must be true that whatever decay there may have existed would be increased by the exposure to the weather for the time above stated, and the additional exposure may have made the inward decay apparent on the outside of the timber. It is also true, we think, that timber perfectly sound, when tested by the rule of ordinary care and observation, might show symptoms of decay from an exposure of ten months to the weather. In the nature of things the piling could not have been in the same

condition when the piece was sawed off as it was at the time of the accident. If partially decayed then, such decay would be increased; or if not apparently decayed then, it might be so at the time the piece was taken off. The introduction of this piece of timber was naturally calculated to give the jury a false impression and to hold the defendant liable for the decay which without doubt took place during a period of ten months.

· It must be remembered that the piece of timber exhibited to the jury was taken from. a pile that did not go down with the bridge, and the jury are told in the foregoing instruction that they might consider the same "in so far as its condition may throw some light upon the condition of the other pilings under that portion of the bridge that did fall." How it was possible for the jury to derive any aid from the evidence referred to we are at a loss to conceive.

For instance, the piece of timber introduced in evidence no doubt was more or less decayed; indeed, it may have been rotten; the jury may have, therefore, inferred or guessed that the other piling that went down with the bridge was unsound, decayed ·or rotten to the same extent. This, at best, would have been a mere guess. It could not have been based on any theory that had even an approach to soundness.

It was natural that the jury should conclude that as the piece exhibited was decayed and rotten, and yet had stood the strain at the time the bridge·went down, that the piling which failed to stand the strain was and must have been more decayed and rotten. Upon the improper construction, or because of the decay in and rotten condition of the piling and timbers, the plaintiff's right to recover largely rested. If it is once admitted that the bridge was properly constructed and the timbers and pilings were sound, and that the bridge fell because the supports of the piling ·were washed out by reason of the unprecedented fall of rain, the plaintiff's chance of a recovery was very considerably lessened.

It may be said that the jury might at least consider this evidence, and by considering the exposure of the piling, and applying thereto their knowledge of timber and the changes that must necessarily result therefrom, arrive at a reasonable

and correct conclusion. It is barely possible that experts, if there be any such, may do so, but we seriously doubt it. That the ordinary juror could not, we feel satisfied.

We can readily conceive that the condition or state of the weather, whether there were frequent showers of rain followed by hot, sultry and humid weather, would have much to do with the decay of .timber exposed thereto. So, too, we are ready to believe, would the place, especially with reference to its dampness, have much to do in effecting more rapid changes in the state or condition of the timber when exposed than in a more dry place and atmosphere.

For the reasons stated, and many more that might be given, we feel constrained to hold that in admitting the evidence and giving the instruction above mentioned the court erred, and that the case must be
REVERSED.

ON REHEARING.

A rehearing is asked on the ground that a "mistake was made in the opinion as announced, not so much, perhaps, as an abstract proposition, but in overlooking a few important facts." It is also said, "The point upon which the case was reversed was not argued at all on the part of appellee, and but slightly alluded to by appellant." We very much regret that counsel did not present in the original argument what he has presented in the petition for a rehearing; the apparent mistake would not then have occurred. The reversal is based on two grounds; the admission of improper evidence, and an erroneous instruction based thereon. We held the evidence to be incompetent, for the only purpose it seemed to us it could have been admitted to establish. Our attention is now called to the fact that it was a controverted question whether drift bolts had been driven through the caps, or timbers that rested on the piling, into the ends of the piling, and it is insisted the piece of timber was admissible for the purpose of showing there were no marks, or signs, indicating that any such bolts had been driven therein. Our attention is also called to the fact that the piece of timber in question was shown to these witnesses, and they were asked as to the existence of such.

marks or signs. The abstract contains 105 printed pages of testimony, and it fails to show what was the avowed object, or purpose, in the introduction of the piece of timber. We overlooked the fact that it could be claimed the testimony was admissible on the ground now claimed by counsel; whether under the circumstances the blunder is excusable, counsel and the profession must determine.

We are satisfied the testimony was competent and admissible, and there should not be a reversal for that reason, and in this respect the foregoing opinion is erroneous. But we are still of the opinion the evidence was not admissible for the purpose of aiding the jury in determining the state or condition of the piling as to decay or rottenness at the time of the accident, and this we understand counsel as an abstract proposition to substantially concede. If this be true, the instruction copied in the opinion, based on this identical evidence, was clearly erroneous; for it makes this testimony proper, pertinent and available for the purpose of aiding the jury to determine the question we have held it was inadmissible to prove. The court below, like ourselves, seems to have understood that the evidence was introduced and admitted for the purpose, and as tending to prove, the condition of the piling as to decay or rottenness at the time of the accident. In the state of the record we are not sure but the claim now made is an afterthought, but whether it is or not is perhaps immaterial.

It is also insisted as this case is identical in all respects with the Locke case, except in the particular on which it is reversed, and as that case has been affirmed, that it is difficult to see why additional evidence and instructions should produce a reversal, and counsel proceed to say:

"To a mind unskilled in the judicial mode of reasoning, it becomes rather difficult to understand why the law should be as thus stated, but we presume that such is the law, and that law is the 'very perfection of human wisdom.' And that it is equally troublesome for a mind unaccustomed to a judicial way of thinking to distinguish this case from the numerous other cases, heretofore decided by your honors' court, wherein it has been held "that a reversal will not follow the admission

of improper testimony, where the verdict would have been the same had the objectionable testimony not been admitted."

We did not affirm the Locke case because we believed the verdict to be right, or that if the question had been submitted to us instead of the jury we would have made the same finding. Counsel and the profession fully understand and appreciate the well known practice in this State, and we believe the most if not all the other courts of last resort in this country. We did not discuss the evidence in the Locke case or in any way indicate what were our views as to the correctness of the verdict as an original question independent of the finding of the jury. Our reasons were two-fold. It was not deemed necessary, and, this case being reversed, we deemed it improper to indicate our opinion to the possible prejudice of either party. All we determined was that under the settled practice we could not interfere with the finding of the jury. Had the verdict been the other way and there had been an appeal by the plaintiff the result would have been the same. An erroneous instruction has been given, a presumption of prejudice arises, and there is nothing in the record sufficient to satisfy us that such error was not prejudicial. Upon what principle we are authorized to look into another record, or rather at the finding of another jury, in another case, and therefrom determine the error is not prejudicial we are not advised by counsel. If the present case stood alone, and the Locke case had never been tried, we feel convinced that counsel would not claim the error in question was not prejudicial.

It is objected that the exceptions to the instructions are not sufficiently specific and definite. This objection is now made **2. PRACTICE** for the first time. It is, therefore, too late. But **in the supreme court:** waiving that. The exception is as follows: "And **exceptions.** to the giving by the court of said instructions, Nos. two to fourteen, inclusive, and to the giving of each of them, defendant at the time excepted." This is sufficiently definite and certain, when exceptions are taken at the time instructions are given. Code, section 2787; *Sherwood v. Snow, Foote & Co*, 481, *ante*. The petition for a rehearing is overruled.