## Lyons Lumber Company v. Stewart.

(Decided April 10, 1912.)

### Appeal from Rockcastle Circuit Court.

1. Judgment—When Will Not be Reversed—Evidence—Notice.—A judgment will not be reversed for the admission in evidence of a letter press copy of a letter without notice to the adverse party to produce the letter or proof that it is lost, when upon the trial the adverse party practically admitted receiving the letter, and the admission of the evidence on the whole case was not prejudicial to his substantial rights.

2. Evidence—Copy of Telegram.—The copy of a telegram which is delivered to the sendee may be given in evidence by him without producing the written message which the sender delivered to the telegraph company.

3. Note—Endorser—Surety When Cannot be Held.—Under the negotiable instrument act, one who endorses a note cannot be held liable as surety on it unless he indicates in his endorsement by appropriate words his intention to be so bound.

L. W. BETHURUM for appellant.

J. W. BROWN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

Charles S. Lyons, who did business under the name of the Lyons Lumber Company, shipped a consignment of lumber to New York City; the person to whom it was shipped refused to accept it, and Lyons went to New York to see about it, taking with him a letter of introduction from a mutual friend to H. S. Stewart, an attorney living in New York. He presented his letter of introduction to Stewart, and employed Stewart to assist him

in regard to the lumber. They found a car load of the lumber near the lumber yard of Silverstein & Silver, and Lyons sold this car load to them for $307.70, taking their note for it due in four months. He endorsed the note and Stewart also endorsed it and he thus discounted it to a bank in New York with which Stewart did business, and he paid Stewart his fee, $25. Silverstein & Silver did not pay the note at maturity, and Stewart, as endorser, had it to pay. He brought this suit against Lyons to recover the amount he had paid, less a credit he had collected from Silverstein & Silver. Lyons in effect pleaded by way of defense to the action that Stewart represented to him that the note was good and agreed to guarantee it as the surety of Silverstein & Silver at the time the note was executed, and that in pursuance of this agreement to become the surety of Silverstein & Silver, Stewart endorsed the note to the bank; that he would not have accepted the note but for the agreement of Stewart to endorse it, and that as between him and Stewart, Stewart was the surety of Silverstein & Silver. Proof was taken and on a trial of the case before a jury there was a verdict and judgment in favor of Stewart. Lyons appeals.

We do not find in the record any substantial controversy as to these facts: Stewart did not know Silverstein & Silver; he had no interest in the matter except as the attorney of Lyons; Lyons, after the note was taken told Stewart that money was very tight in Kentucky and asked his assistance in discounting the note. Stewart says that he signed the note as endorser simply for the accommodation of Lyons, and because he had been recommended to him by their mutual friend in Kentucky. The circumstances of the transaction all bear out Stewart's version of it. It is insisted, however, that the court erred in allowing a letter which Stewart wrote to Lyons to be read in evidence, also a telegram which Lyons sent Stewart. But Lyons when he came upon the stand practically admitted receiving the letter and sending the telegram. The copy of the letter was not admissible in evidence regularly until notice was given to Lyons to produce the original, and it was shown that the original was lost. But in view of the testimony of Lyons on the trial and all the facts of the case we can not see that he was in any wise prejudiced by the admission of the copy of the letter. Stewart had a right to give in evidence the telegram which he re-

ceived from Lyons. This was the original document within the meaning of the rule. It was not necessary for Stewart to go to the telegraph office at which Lyons sent the message, and produce the paper which Lyons signed and left there. A man who signs a message of course knows that the communication will be forwarded over the wire, and he can not complain of the introduction in evidence of the message as it was delivered by the telegraph company to the person addressed. The telegraph company was his agent to transmit and deliver the message, and the message delivered to Stewart is Lyon's message to him. If any mistake was made in the transmission of the message, and the real message which Lyons sent was not delivered to Stewart, he might show this. But that is not the case here. His own testimony shows he sent the message as Stewart received it.

Besides all this, section 63 of the Negotiable Instrument Act, which is in force both in New York and Kentucky, is as follows:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

We had before us in several recent cases, the construction of this statute, and there held that a defense such as Lyons here makes cannot be maintained. (Mechanics and Farmers Bank v. Katterjohn, 137 Ky., 427; Grayson Co. Bank v. Elbert, 143 Ky., 750; First National Bank v. Bickel, 143 Ky., 754.)

Judgment affirmed.