STATE OF IOWA, Appellee, v. A. G. LOZIER, Appellant.

**TRIAL:** **Verdict—Disregard of Instructions.** An instruction in a criminal cause that a witness for the State was an accomplice must be obeyed by the jury, even though the court was in error in so instructing.

**CRIMINAL LAW:** **Evidence—Accomplices—Sufficiency of Corroboration.** If an accomplice is sufficiently corroborated as to any material *part* of his statements as a witness, then the jury is at liberty to believe any *other part* of his said statements, even though there is no corroboration whatever as to such other part. Corroboration held ample in a prosecution for receiving stolen property.

**CRIMINAL LAW:** **Evidence—Evidence Unlawfully Obtained.** Principle reaffirmed that material testimony is admissible in the trial of a criminal cause, even though such testimony was unlawfully obtained by the State.

**CRIMINAL LAW:** **Evidence—Sufficiency.** Whether a record contains sufficient evidence to support a conviction may be materially influenced by the failure of the accused, as a voluntary witness in his own behalf, to deny in part the incriminating evidence of an accomplice.

**CRIMINAL LAW:** **Evidence—Accomplices—Corroboration As to Exhibits.** A material exhibit duly identified by an accomplice is admissible against an accused, even though the evidence corroborative of the accomplice does not extend to said particular exhibit.

**CRIMINAL LAW:** **Evidence—Best Evidence—Telegrams.** The telegram which a party *receives* will be deemed the original when there is no showing that a written message was delivered to the company at the point of sending; and in case of the loss of such delivered telegram, a copy thereof is receivable in evidence when material.

**CRIMINAL LAW:** **Evidence—Accomplices—Permissible Corroboration.** The State may corroborate the testimony of its accomplice-witness, even though such corroboration does not "tend to connect the defendant with the commission of the offense." So held where a telegram transmitting money to the accomplice was received in evidence in corroboration of the testimony of the accomplice that he had received money from the accused by means of such telegram.

**APPEAL AND ERROR:** Assignment of Errors—Additional Assignment
9   **on Rehearing.** An appellant must, on rehearing, stand on the errors
  specified by him on the original submission.

**Headnote 1:** 16 C. J. p. 921.  **Headnote 2:**  16 C. J. pp. 704, 712.
**Headnote 3:** 16 C. J. p. 570.  **Headnote 4:**  16 C. J. p. 540.  **Headnote
5:**  16 C. J. p. 570.  **Headnote 6:**  16 C. J. p. 704.  **Headnote 7:**  16
C. J. p. 616.  **Headnote 8:**  16 C. J. p. 703.  **Headnote 9:**  17 C. J. p.
199.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

NOVEMBER 11, 1924.

OPINION ON REHEARING JUNE 25, 1925.

REHEARING DENIED OCTOBER 2, 1925.

THE defendant was convicted of the crime of receiving
stolen property. From the judgment entered upon a verdict of
guilty, he appeals.—*Affirmed.*

*J. A. Dyer* and *Scott M. Ladd,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,* As-
sistant Attorney-general, and *Vernon R. Seeburger,* County At-
torney, for appellee.

VERMILION, J.—The record has been carefully re-examined
in the light of the argument upon resubmission.

There was testimony from two witnesses, Van Cleve and
Jones, which, if sufficiently corroborated, and believed by the
jury, was ample to sustain the verdict. The trial court instruct-
ed that Van Cleve and Jones were accomplices.
1. TRIAL: verdict: This instruction was undoubtedly correct as to
  disregard of in-
  structions.  Jones, who testified that he changed or obliter-
ated the number on the engine of the car at appellant's request;
but it might be open to question as to Van Cleve, who testified
that he stole the car and delivered it at a place designated by
appellant. See *State v. Boyd,* 195 Iowa 1091. But we have
no occasion to consider that question; for, whether right or
wrong, the instruction became the law of the case, and the jury
was required to consider these witnesses as accomplices. No

complaint is made that the court did not properly instruct as to the corroboration required of the testimony of an accomplice, in order to warrant a conviction.

I. The principal question in the case is whether there was sufficient corroboration of the testimony of the accomplices tending to connect the defendant with the commission of the offense charged, to support the verdict.

The testimony of Van Cleve, in brief, was that he was indebted to appellant, who was pressing him for payment; that appellant said that if he (Van Cleve) would steal a car for him, he would pay him $50, and cancel the indebtedness; that he stole the car in question, a Ford roadster, in Des Moines, on the evening of May 10, 1921, and under direction of appellant, drove it to appellant's house and left it; that, the next morning, he and appellant went to the house, and Van Cleve took the stolen car, by appellant's direction, to what is spoken of in the testimony as the Hull Avenue garage, where he left it; that appellant had given him a key to the garage, and paid him $50 in cash; that, a few days later, appellant told him to leave the state, and suggested that he go to California; that he consented to go to Eldon; that he went to Ottumwa and to Albia, and from the latter place called appellant, who asked him if he was broke, and said he would send him money, which he did by telegraph, to Frank Ford, a name that appellant had suggested he should use; that he returned to Des Moines; that appellant suggested that he go to Los Angeles, and bought a railroad ticket and gave it to him; that he did not go, and turned the ticket over to an officer; that later, appellant again asked him to go to California, and took him to Ames, where he purchased a ticket for him to San Diego, which Van Cleve signed in the name of S. Hudson; that he did not go to California, and turned this ticket also over to the officers. Van Cleve testified that he received the money at Albia about the middle of June, 1921. The ticket to Los Angeles appears to have been dated June 30, 1921, and the one to San Diego, October 2, 1921. Both tickets were in evidence.

The appellant, as a witness, denied buying the ticket to San Diego, but did not deny that he purchased a ticket to Los An-

2. CRIMINAL LAW: evidence: accomplices: sufficiency of corroboration.

geles and gave it to Van Cleve, and claimed that he did so to assist Van Cleve in some trouble with a woman, and to have him look for a car upon which appellant had a mortgage.

The stolen car was recovered by the police on June 4, 1921, being found at what is spoken of in the testimony as the Hohn garage; and appellant was arrested on the same day. On the following day, the car was identified by the owner, W. E. Thomas, and his son, as the one stolen on the night of May 10th. W. E. Thomas testified that, about June 18, 1921, appellant called on him at his bank in Norwalk, and said "he wanted to talk about the Ford roadster I said I had stolen; that he had purchased it, and gotten an affidavit from the owner, and it cost him quite a bit of money to fix it up, and he didn't like to lose it. Wanted to know if I was sure of the identity of the car, and I told him yes; and he invited me to his office in Des Moines to talk it over. Said he had it in the garage with a man by the name of Hun."

Appellant's version of this conversation was that, after his arrest, he went to see Thomas, and asked him if he was sure his car was among certain cars taken from appellant; if he could identify his car. He testified that he did not tell Thomas he had bought the car; that he told him his car was not among those taken from appellant's place, but over at Hohn's garage.

Testimony of numerous officers tending to show that the car in question had been at the Hull Avenue garage between the time it was stolen and the time of its recovery, was stricken from

3. CRIMINAL LAW: evidence: evidence unlawfully obtained.

the record, on the ground that the evidence was procured by illegal searches, notwithstanding the holding of this court in the cases of *State v. Tonn*, 195 Iowa 94, and *State v. Rowley*, 197 Iowa 977. But again, the ruling became the law of the case, and the excluded testimony is not to be considered.

The Hull Avenue garage was an isolated building, with no artificial light, and with the windows barricaded or darkened; and there was testimony, aside from that of the alleged accomplices, that it was rented by the appellant. Testimony of one of the officers remained in the record, to the effect that, between May 17th and 20th, he saw a man in the garage, working on a Ford roadster. The car in question, at the time it was recovered,

had had the engine number obliterated or changed, the tires changed, the radiator changed, and the rear fenders removed, and it had been painted red.

Van Cleve's mother testified, in substance, that appellant frequently called her by telephone, and came to the house, inquiring about Van Cleve; that he said they were both in trouble, and that he would buy the boy a ticket to California; and that she thought this was about the time appellant was arrested.

J. A. Brophy testified that, while he was operating a private detective agency in Des Moines, the appellant, in company with one Willets, came to his office, in the fall of 1921, and said that Van Cleve was to be a witness against him, and that he had bought him a ticket to California, and that Van Cleve had turned the ticket over to one of the police officers; that he wanted to "set" an automobile, and have Van Cleve and Willets steal it and bring it to their place, and proposed that Brophy was to be "planted" there, and that, when Van Cleve came up, he was not to make any arrests, but to call Van Cleve's name, and let him get away; that he would let Van Cleve get away, rather than stand a five-year sentence for stealing automobiles; that he said there was money in it; and that he came to the office several times, and that this was the subject of the conversation each time. Brophy's wife testified that appellant came to the office several times, inquiring for Brophy. The appellant testified that Brophy sent Willets to him, and made the proposition, which he refused to accept. Willets was not a witness.

The statute, Section 5489, Code of 1897 (Section 13901, Code of 1924), provides:

"A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

We have frequently held that the corroboration need not be as to every material fact testified to by an accomplice; that the requirements of the statute are met if the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the offense. *State v. Allen,* 57 Iowa 431; *State v. Hall,* 97 Iowa 400; *State v. Dorsey,* 154 Iowa

298; *State v. Patten,* 191 Iowa 639; *State v. Christie,* 193 Iowa 482; *State v. Seitz,* 194 Iowa 1057.

If there be any corroborating testimony, as a general rule, the question of its weight and sufficiency is for the jury. *State v. Miller,* 65 Iowa 60; *State v. Dietz,* 67 Iowa 220; *State v. Van Winkle,* 80 Iowa 15; *State v. Dorsey,* supra; *State v. Patten,* supra.

The essential elements of the offense with which the appellant was charged, were that he bought or received stolen property, knowing that it had been stolen. Testimony of his admission that he bought the car and had it in the "Hun" (Hohn) garage, where it was found by the officers, altered in the manner described, and that a car of that description was previously seen in the Hull Avenue garage, of which appellant had control, under circumstances tending to show an effort to conceal it, and that work was being done on it, and that appellant, after his arrest upon the charge of receiving the stolen car, made persistent efforts to get Van Cleve beyond the reach of a subpoena, tended to corroborate the testimony of Van Cleve that appellant received the car, knowing it to have been stolen, and therefore tended to connect him with the commission of the offense.

II. As to the sufficiency of the evidence to sustain the conviction, aside from the question of corroboration of the accomplices, it is a significant fact that, while appellant was a witness on his own behalf, and entered vigorous denials of the testimony of witnesses for the State upon certain collateral matters, such as the purchase of the ticket to San Diego, the conversation with Wilson, and the transaction with Brophy, he did not deny, as a witness, that he received the car from Van Cleve under the circumstances testified to by the latter; that it was in the Hull Avenue garage; that that garage was under his control; and that he procured Jones to obliterate the engine number, the day after the car was stolen, and to remove the tires, a few days later. The question of the credibility of the witnesses was for the jury. We are of the opinion that the verdict finds sufficient support in the evidence.

*4. CRIMINAL LAW: evidence: sufficiency.*

III. Complaint is made of the admission in evidence of a

key to the Hull Avenue garage, that Van Cleve testified appellant gave him at the time he took the stolen car there, and that

5. CRIMINAL LAW: evidence: evidence unlawfully obtained.

was subsequently taken from another person found at the garage by the officers. As we understand the objection, it goes to the manner in which the State came into possession of the key. The complaint is without merit. *State v. Tonn,* supra; *State v. Rowley,* supra.

IV. Error is assigned on the admission in evidence of the railroad ticket to San Diego, which Van Cleve testified appellant purchased and gave to him at Ames. The complaint is predi-

6. CRIMINAL LAW: evidence: accomplices: corroboration as to exhibits.

cated upon the idea, upon which stress was laid throughout the argument for appellant upon the original submission of the case, that, since the railroad agent who sold the ticket did not positively identify appellant as the purchaser, there was no corroboration of Van Cleve at this point, and the ticket was therefore inadmissible. The statute does not require that no statement of fact by an accomplice can be accepted as true, or even received in evidence, unless corroborated. It is not necessary that such corroboration extend to every detail or item of evidence given or produced by the accomplice, to admit of its acceptance as true by the jury,—much less its introduction in evidence. See authorities cited above.

V. It is insisted that the court erroneously admitted in evidence a copy of a telegram by means of which Van Cleve testified he received money from appellant when at Albia, and

7. CRIMINAL LAW: evidence: best evidence: telegrams.

it is said that the original telegram delivered to the telegraph company for transmission would have been the best evidence. It does not appear that any written message was delivered to the telegraph company at Des Moines for transmission. In the absence of such a showing, the telegram as received is the original writing. *Bank v. Richardson,* 47 N. C. 109. But even where a written message is delivered for transmission, it is not always true that it is to be considered the original. It has been held to depend upon whether the telegraph company was the agent of the sender or the recipient. 22 Corpus Juris 1019, 1020. *Lyons Lbr. Co. v. Stewart,* 147 Ky. 653 (145 S. W. 376). Assuming that the telegram was received by Van Cleve, it, so far as appears, was

the original, and its loss is sufficiently shown to render admissible what the witness testified was a copy. But the copy is not in the record. It appears, so far as the record discloses, to have been nothing more than a means of transmitting money to Van Cleve by telegraph. If it was merely the writing out of a telegraphic order from the operator or office at Des Moines to the operator at Albia to pay money to Frank Ford,—the name Van Cleve was using,—there is no reason to infer that there was any other or original writing.

Van Cleve testified that he had arranged with appellant to use the name Frank Ford; that he communicated with the appellant by telephone or telegraph from Albia; and that appellant sent him money there in that name. Error was not assigned, on the first submission, on the admission of this testimony, but only on the admission of the copy of the telegram. The order or telegram, on the strength of which the money was paid to him, tended to corroborate him as to the fact that he received money at that time and place in that name. That the money was paid to him under a false name which appellant had suggested he should use, was sufficient, in connection with the testimony that he was communicating with appellant, who said he would send him money, to make it admissible as against appellant. Of course, since the whole transaction was shown by the testimony of Van Cleve only, it could not, in any event, be considered as corroboration required by the statute, tending to connect the appellant with the commission of the offense; but the State was entitled to corroborate Van Cleve's testimony, even though the corroboration did not tend to show appellant's connection with the crime charged, and was entitled to show appellant's acts by the accomplice, although such testimony, without the required corroboration, would not warrant a conviction. Were we in doubt as to the admissibility of the copy of the telegram, we would be constrained to say, in view of the fact that the copy is not in the record, and that Van Cleve testified to his communication with appellant and the receipt of money from him as the result of such communication, that no prejudice resulted from its admission. Appellant, as a witness, did not deny the transaction, or the sending of money to Van Cleve at Albia.

8. CRIMINAL LAW: evidence: accomplices: permissible corroboration.

VI. Numerous alleged errors not relied upon on the original submission are now urged upon our attention. It is well settled that a new case cannot be made on a petition for rehear-ing, and that matters cannot be then insisted

9. APPEAL AND ERROR: assign-ment of errors: additional as-signment on re-hearing.

upon that were not presented on the original submission. *Hintrager v. Hennessy,* 46 Iowa 600; *Mann v. S. C. & P. R. Co.,* 46 Iowa 637; *Long v. Garey Inv. Co.,* 135 Iowa 398. It is due to distinguished counsel to say that these matters are pre-sented, not so much as in themselves requiring a reversal, as that, it is said, they show that appellant did not have a fair trial. They relate to questions arising on the introduction of testi-mony. Our re-examination of the record leaves the impression that, while there was no error resulting in prejudice to appel-lant, the State was deprived of the benefit of testimony that, under our decisions, was admissible.

The testimony of Van Cleve and Jones is severely criticized, as is also the conduct of the officers of the law. It is admitted by Van Cleve that, after he turned the stolen car over to appel-lant, he informed the officers, and kept them informed of appel-lant's subsequent efforts to get him out of the state. These mat-ters, and many others brought to our attention, were all before the jury; and it suffices to say here that we find nothing in the record requiring us to hold that the verdict is not supported by the evidence, or that it was the result of passion or prejudice.

The judgment is—*Affirmed.*

FAVILLE, C. J., and EVANS, STEVENS, ARTHUR, and DE GRAFF, JJ., concur.