STATE OF IOWA, Appellee, v. GEORGE E. HART, Appellant.

MAY 15, 1928.

*Snell Brothers* and *George A. Gorder*, for appellant.

*John Fletcher*, Attorney-general, and *George H. Clark*, County Attorney, for appellee.

DE GRAFF, J.—The defendant, George E. Hart, was indicted by the grand jury of Ida County, Iowa, for the crime of breaking and entering a certain building known as the Luna Theater, located at Battle Creek, Iowa. The *corpus delicti* is clearly established. Under the evidence offered by the State, three persons were involved in this criminal venture, to wit: the defendant, Hart, his accomplice, John Kauffman, and one Elmer Gergen. The conviction of Hart is based primarily upon the testimony of the accomplice, Kauffman, who turned state's evidence, and related to the trial jury a complete story of the crime from its inception.

Was the testimony of the accomplice sufficiently corroborated, within the purview of the statute, Section 13901, Code of 1924? This is the controlling question suggested in the brief and argument of appellant. By virtue of the statute, a conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. In recent pronouncements, this court has had occasion to construe and apply this rule of statute, and there is no reason to review the authorities at this time. See *State v. Lozier*, 200 Iowa 652; *State v. Gaskill*, 200 Iowa 644; *State v. Carlson*, 203 Iowa 90.

According to the testimony of the accomplice, Kauffman, these three parties were not strangers to one another; and, pursuant to a prearrangement, these men, on the evening of September 10, 1925, drove from Sioux City to Battle Creek in Kauffman's Cadillac touring car, arriving in Battle Creek about 1:30 the following morning. Kauffman testified that he remained in the Cadillac while Gergen and Hart broke and entered the theater building, and that, when they reappeared, he saw that they were in possession of cigarettes, tobacco, and other merchandise that had been taken from the billiard hall. The plunder was loaded into the car, and thereupon Gergen and Hart returned to the building, to ransack the theater. They returned with two saxophones and a clarinet. They were about to leave the town when the defendant suggested, according to the testimony of Kauffman, that they had not as yet secured anything of value; that they "go back and rob the garage."

This they did, and took therefrom 21 tires and 22 inner tubes, which were loaded in the back of the touring car. They then left Battle Creek for Sioux City. This plunder was fully identified upon the trial.

It appears that, by reason of punctures on their return trip to Sioux City, they left the pavement, and turned onto an "off-road," where the tires and tubes were unloaded and concealed. About one mile farther west, they hid the musical instruments, cigarettes, and other merchandise. From this point the trio went to Sioux City, and were seen riding in the front seat of the Cadillac car on the morning in question. Kauffman testified that he did not see anyone that he knew in Sioux City at this time, but that Hart made the remark:

"There goes Detective Spencer. He is the biggest man hunter in Iowa."

Spencer was called as a witness on behalf of the State, and testified that he saw defendant Hart riding in the front seat of the Cadillac, with Kauffman and Gergen, on the streets of Sioux City, the morning of the burglary at Battle Creek.

At this point, another item of corroboration tending to connect the defendant with the commission of the offense may be noted. The police department of Sioux City had been given a tip as to the location of the cache which had been selected by these parties on the little used byroad, and the police proceeded to stand guard. Their efforts were rewarded by taking into custody Gergen and Kauffman, and also by seeing the defendant Hart drive his car into the same byroad. This trip to the cache was made by Gergen and Kauffman for the purpose of disposing of the tires and tubes to a person known as "the man from Salix," who drove his car to the place where the tires were hidden. On this trip, Gergen and Kauffman drove the Cadillac car. When the cache was reached, Gergen jumped out of the car, and Kauffman intended to drive a little farther on, and turn around. It was at this point that the presence of the officers was discovered, and Kauffman tried to make his get-away, but in this he failed. While the officers held the parties, Hart was observed coming from the west in his Studebaker. He was stopped, but was not arrested at this time, as the explanation he gave for his presence was accepted by the officers. Kauffman and Gergen were placed in jail, and later Hart was arrested.

Kauffman, the accomplice, testified that, prior to the burglary, and when they reached Battle Creek on the morning of the crime, the defendant Hart took his ring of keys from his pocket, and placed it in one of the side pockets of the Cadillac. The key ring had an identification tag, bearing the inscription "Geo. Hart, U. S. Marine Corps."

It was at the time of Kauffman's arrest at the cache that Sheriff Beardsley found Hart's key ring in the pocket of the Cadillac. This fact tends to connect the defendant with the crime charged. It constituted some proof that the Cadillac was used in the commission of the offense. There was no opportunity or reason on the part of the accomplice to plant the keys to make a case against Hart. Kauffman was not expecting to be taken into custody at the time and place in question. He was, in fact, attempting to escape from the place at the time Hart's keys were found in the Cadillac. This evidence must be viewed as corroborative. The case of *State v. Duncan*, 158 Iowa 652, is distinguishable on the facts.

It may also be observed that, on another occasion subsequently to the breaking and entering, three men stopped at the Wilson farm, near Lawton, Iowa. Kauffman testified that the defendant, Gergen, and he were the three men who stopped at said farm, and that this trip was made for the purpose of securing the hidden plunder; but that, by reason of delays on account of punctures, they did not take the merchandise from its hiding place.

At this farmhouse there was a young girl named Ethel Wilson, from whom Hart borrowed a tire pump. She was called as a witness for the State, and testified that, on September 11th, a Cadillac touring car drove into the yard of her home, in which car three persons were riding. She told them where to find a tire pump, and upon the trial described the men. This description, in a general way, tallied with the three men in question.

It may be further noted that, when Sheriff Beardsley questioned Hart as to his whereabouts on the night of September 10th, Hart told the sheriff that he was under the care of a Dr. Summers, in Sioux City. The sheriff then and there, with the consent of Hart, and in his presence, telephoned the doctor, to ascertain the truth of the statement made by Hart. The doctor

expressly denied that he had treated Hart on the evening in question.

There are many circumstances which the jury was privileged to consider in determining the guilt of the defendant Hart. The police officer who observed Hart coming over the hill to the cache stated that Hart shut off his motor, and allowed the car to coast down the hill; that Hart was looking very carefully as he came down the hill; that, when Hart saw Gergen, he stepped on the accelerator; that Hart struck the ditch so fast as to nearly overturn the car. Hart had very little to say to the officers, and "seemed pretty much excited. Made no inquiry why we were there." Corroboration need not be as to every material fact testified to by an accomplice, but the requirements of the statute are met if the accomplice is corroborated in some material fact or facts tending to connect the defendant with the commission of the offense. The weight and sufficiency of the testimony are for the jury. A careful reading of the instant record discloses that the limitations of the statute have been satisfied.

The defendant Hart became a witness on his own behalf upon the trial of this cause, and, as a consequence, stood on the same footing as any other witness in relation to matters affecting his credibility. *His general moral character was a matter of inquiry, for the purpose of testing his credibility.* Section 11271, Code of 1924. The State was privileged to show, and did show, by way of impeachment of Hart, that he had certain associations with Kauffman and Gergen which, in the first instance, were denied by Hart. This evidence of impeachment was permissible upon a matter of material inquiry in this case, to wit: to prove that these three persons, around whom Kauffman's testimony gravitates, had a sufficient acquaintanceship so that an arrangement and deal had been entered into by them to burglarize the Luna Theater building, as testified to by the accomplice, Kauffman.

Other matters are argued by appellant, but the outcome of this appeal is not dependent thereon. The primary proposition has to do with the sufficiency of the evidence to sustain the verdict. The jury has spoken, and the record discloses no reason to

disturb the finding made by the triers of the facts. The judgment entered is—*Affirmed*.

MORLING and WAGNER, JJ., concur.

STEVENS, C. J., and ALBERT, J., concur in result.