## No. 15,793.

## JONES *v.* THE PEOPLE.
(195 P. [2d] 380)

Decided May 24, 1948.

Mr. F. E. DICKERSON, Mr. W. E. DOYLE, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

PLAINTIFF in error Jones and one Bagnall were convicted of conspiracy to obtain money and property by means of false pretenses. Jones alone here seeks reversal. We believe that only two of the grounds urged by plaintiff in error as requiring a reversal of the judgment, deserve consideration; they are: (I) failure of evidence and (II) admitting evidence of other transactions.

The evidence in brief summary discloses that in October, 1942, Jones approached two men who were working in plastics in a barn in Colorado Springs and induced them to transfer their operations to Denver upon his agreement to finance them for an interest in the business. He organized a common-law trust called the Chemical Research Company, to take over and operate the plant. Bagnall was employed to sell interests therein and he and Jones sold interests to several people during the year 1943. On December 9, 1943, Bagnall received and accepted a proposal for the assignment to him, subject to the approval of the proper state officials, of four unpatented state mining claims in New Mexico. Two of these claims were held under state lease and the other two under a ninety-day exclusive permit from the state to prospect for lode minerals thereon, carrying the right to apply for a lease to said claims upon showing of sufficient development work and mineral indication. This mining property is referred to as the Bonita Property. The consideration to be paid by Bagnall for the interests assigned to him was to be $17,666.72, payable $2,000 down, $500 on December 24, and $5,000 monthly there-

after, in addition to certain payroll expenses, then incurred, and an over-riding royalty to his assignor as well as the royalty payable to the state of New Mexico. This informal proposal was to be, and was, incorporated in a detailed formal agreement executed January 10, 1944, which further provided an option for termination and forfeiture by the assignor upon thirty days default in fulfillment of any obligation thereunder. About the middle of December Bagnall proposed to Jones that he join with him in handling this property, and on the 17th of that month the two men executed a declaration of trust for the operation of the Bonita Property, or any other business acquired by the trust, as trustees for the owners of beneficial interests therein. Provision was made for capital stock of 400 shares of a par value of $500 each. Forty of these shares were issued to one Price for services in obtaining the property for Bagnall, and the entire remainder, of a par value of $180,000, was issued to Bagnall and Jones jointly subject to their agreement to finance the company therefrom.

Outside the original down payment of $2,000 the only further payments made on the purchase price were as follows: January 26, 1944, $500; February 16, 1944, $2,000; February 22, 1944, $3,000; April 4, 1944, $500. There is no evidence as to forfeiture by Bagnall's assignor or other termination of interests in the property. The only shipment of ore made from the mine was one carload of fluorspar, which it appears was the mineral for which the mine was to be developed, and the date of that shipment is not shown. It was sold to the Continental Ore Company of New York, and the statement was dated January 3, 1944. Jones testified that the trust took over the Bonita mine on January 7, and if so, no shipment of ore was made after it took possession.

During the period from December, 1933, until their arrest on April 14, 1944, defendants made sales of many shares in the Bonita Trust, some being made for cash and the balance in exchange for similar interests in the

Chemical Research Company to which reference has been heretofore made.

Under the bill of particulars filed by the District Attorney on motion of defendant Jones, the false pretenses relied on were made in connection with the offering for sale and to induce the purchase of units in the Bonita Trust, and included these: (1) That the Bonita Trust was shipping a carload per week of fluorspar ore to the smelter; (2) that the Bonita Trust was properly financed and that the defendants as trustees had sufficient funds to complete the purchase of the mining claims and to continue operation of them; (3) that the Bonita Trust was already a paying proposition; and (4) that the Bonita Trust had sufficient money available to finance an enlargement of the plant and production of the Chemical Research Company.

As to the sufficiency of the evidence, witnesses who had purchased the stock testified in substance as follows: One, that shortly after January 11, 1944, Bagnall and Jones discussed with witness the joining of Chemical Research and Bonita. That Bonita was making money, was in a flourishing condition, was turning out ore and would turn out about a carload and a half a week; that they wanted to combine Bonita with the Chemical Research because money was needed for the latter, and the Bonita was already making money; that they wanted her to exchange her Chemical Research for Bonita and that she did so. Another, that in the first half of January, with both Bagnall and Jones present, one of them stated that "they were shipping ore, approximately a carload a week, to this Cap Kaiser who was doing all the building on the west coast and someone in New Jersey, at least on the Atlantic Coast." Another, that about March 20, 1944, Jones said the mine was paid for; that it was on a paying basis; they were shipping ore already; that if the witness invested in the mine, the money would be used to buy machinery for another mine near Ouray, Colorado. Still another, that

on March 20, 1944, witness talked to Jones and Bagnall and was induced by them to exchange his interests in the Chemical Research Company for interests in the Bonita Mining Company; that they urged the combination of the two companies because the Bonita mine was a very excellent mine and they had the finances to enlarge the works of the Chemical Research Company with money from Bonita; that Bonita had the finances so they would carry on the expansion of the work of the plastic molding, provide the Chemical Research Company with an additional building, and bring in machinery and men; that the Bonita was one of the best fluorspar mines in New Mexico; that a large part of the ore was bought already; that the Bonita mine had the money for the works; that they were shipping some ores already—shipping a car a week which brought around $2,000 each; that dividends would start very shortly after. This evidence was substantial and sufficient, if believed by the jury, to justify its verdict.

II. Admitting evidence of other transactions.

A. As to the Caruthers loan. Julia Caruthers, an elderly widow, had purchased a large number of units in the Chemical Research Company on the solicitation of Bagnall and Jones. Thereafter upon the initiation of the Bonita mine operation, she was induced by Bagnall to put up stocks which were sold by him for $3,000 and thereby enable him to make the $2,000 down payment on the mine. This was originally advanced as a loan, but she later accepted units in the Bonita Trust in settlement, and purchased additional units, some for cash and others by exchange therefor of her units in Chemical Research Company. She testified that these dealings, except for the loan for the purchase of the mine, were with both Bagnall and Jones. In connection with her dealings with them, she testified that on March 31, 1944, she loaned to Bagnall and Jones ten one thousand dollar United States bonds for which they put up as collateral, certain units of the Chemical Research Company; that

these bonds were so loaned upon the representation of both Bagnall and Jones that Stanland, from whom Bagnall had obtained assignment of interest in the Bonita mine, was about to foreclose on the mine because of default in payment; that if she would let them use her bonds they would not be sold, but would be delivered to Stanland temporarily as a pledge; that a wheat farmer east of Denver was going to bring in $6,000 worth of wheat when the roads would permit; that with the wheat money they would pay Stanland the amount in default and return to Mrs. Caruthers her bonds within a few days; and that the bonds had never been returned. The written receipt given to Mrs. Caruthers by Bagnall and Jones upon the delivery of her bonds, provided that they were to be returned. Thereafter Jones testified, admitting the receipt of the ten bonds and the immediate sale of nine of them by Bagnall for approximately $10,-000. He denied his participation in the transaction, but admitted the payment the next day from the proceeds of the bond sale, of the sum of $8,750 to one J. Hoyt Johnson; that the Johnson payment had no connection with the Bonita Trust and that the check to Johnson bore the notation in Jones' handwriting, "a complete release for 80 shares Cit. Ser. preferred. A. J. Jones." It is strenuously urged that this evidence was inadmissable and prejudicial.

This contention is without merit. (1) The transaction, to evidence of which objection was made, was first opened up by counsel for defendant Jones. When Mrs. Caruthers testified as to the exchange for her units in Chemical Research for shares in Bonita, defendant's counsel interrogated her as to her then ownership of the units which she had testified as having been exchanged, and brought out the testimony that at the time of the trial she held these same units as security. This opened up the transaction for inquiry by the prosecution as to the loan to defendants in connection with which she took the units as security, to which they now

make objection. (2) All the testimony of Mrs. Caruthers concerning 'the loan and the exhibits pertaining to it were received without a single objection as to their competency, and no motion was made that it be stricken. If error, it was waived. *Wright v. People,* 113 Colo. 224; 156 P. (2d) 123. (3) In conspiracy cases unusual latitude is permitted in the admission of evidence where the prosecution must necessarily depend on circumstantial evidence in order to establish criminal intent. In such case the prosecution may show the entire history of the conspiracy, even though other crimes may be involved, if the evidence tends even remotely to establish the ultimate fact, and the receipt of such testimony rests largely in the discretion of the trial court. *Helser v. People,* 100 Colo. 371, 68 P. (2d) 543; *People v. Stevens,* 78 Cal. App. 395, 248 Pac. 696. So, in *Smaldone v. People,* 103 Colo. 498, 88 P. (2d) 103, under charge of conspiracy to kill and murder evidence of prior robbery of the victim by part of the conspirators was held admissible, and we there said: "One who * * * consents to participate in, and authorizes the initiation of, an illegal project and counsels with those engaging in it; then demands a cut in the illicit gains, even though he for a time remained quiescent in the project, cannot rightfully object to the history of the enterprise being presented by the evidence, even though it involved the commission of a crime by one or more of those who are defendants with him, if the history of such enterprise otherwise throws light on the motive he or his co-defendants might have for committing another crime, and which constitutes a chain of circumstances throwing some light on the probability of their having entered into a conspiracy with him to commit another crime." So, also, in *Fairfield v. State,* 155 Ga. 660, 118 S.E. 395, under prosecution for maliciously burning a railroad bridge, evidence of other criminal acts subsequent to the burning of the bridge was held admissible, in support of alleged conspiracy, the court saying: "But the theory of the State in this

case was, that there existed a conspiracy between numerous persons, one of whom was the defendent in this case, to commit acts of violence, which had for their ultimate purpose the prevention of the operation of trains over the railroad of which the burnt bridge was a part, and that in order to effect their purpose, a series of acts both before and after the burning of the bridge, was committed, and there was a continuity in this series of acts that showed that the different acts of violence were connected as parts of a general scheme; and the State introduced evidence tending to establish the existence of conspiracy, and that the defendant in this case was one of the conspirators." The evidence as to the Caruthers "loan" to Jones and Bagnall tends to establish both their association in a conspiracy and a general fraudulent intent.

B. The Price transaction. As already noted, $20,000 par value of units of Bonita Trust were issued to Price for services rendered in connection with the purchase contract of the Bonita mine. Testimony was given by a certified public accountant concerning the records of the Bonita Trust and defendants. This included testimony that a check was issued by defendants on the trust account on January 17, 1944, "to cash" for $2,500 and charged to interest purchased from Price; that on the same date a deposit of $2,500 was made to the account of Bagnall and Jones, followed on the next day by a check from them to Price for $400. Jones later testified that he and Bagnall repurchased five units from Price for the trust for $500; that the reason for taking $2,500 from the trust funds, instead of the $500 which the shares actually cost, was that they were paying nearly all of the bills to Stanland out of their own account, due to the fact that Stanland would not accept the company checks, and that the remaining $2,000 was paid out for miscellaneous expenses, such as sales expense, trips, and a few payments on property and labor. This evidence, also, was received without proper objection by defend-

ant, and tended to show the association of both Jones and Bagnall in conspiracy, and fraudulent intent.

C. The Hashimoto transaction. Hashimoto, who was a chemist, started the plastic operations which later were taken over by the Chemical Research Company. He testified that in March, 1944, he solicited a loan from Jones and Bagnall; that he received from Bagnall check of the Bonita Trust for $500 as a loan for which he gave his note to the Trust and put up as security thirty units of the Chemical Research Company with an agreement to exchange those units for units of Bonita; that request had been made for repayment of the loan, but he had not paid it; that in connection with that transaction Bagnall and Jones represented that the Bonita mine was a very excellent mine; that they had the finances to expand and enlarge the works of the Chemical Research Company with money from the Bonita for an additional building, machinery and men; that the Bonita mine was one of the best fluorspar mines in New Mexico; that they were shipping a car of ore a week and that as a result of these representations he agreed to exchange his interests in Chemical Research for shares of Bonita Trust. Again, no proper objection was made to the admission of the testimony now urged as reversible error, and again it was evidence going to the very gist of the conspiracy. The fact that Hashimoto exchanged other units for Bonita instead of cash, made him none the less a purchaser, and evidence as to his loan, harmless in itself, was part of the story of the conspiracy which could hardly have been disentangled therefrom.

D. Redeker testimony. Error is assigned to admission of testimony of the accountant Redeker as to the bank account and record books of Bonita Trust and Bagnall and Jones. This was an essential element of the conspiracy in showing the receipts and expenditures by them as trustees of the money of the Bonita Trust and its financial condition, in order to establish the falsity of the representations charged in the bill of particulars.

Objection is made that the records were incomplete and that the witness was permitted to testify as to total moneys received and total moneys spent in the development of the mine and to the fact that from the records he could not account for a substantial balance. Such testimony was proper since these books were kept by defendants and they were responsible for any omissions therefrom, and thereafter Jones was permitted, notwithstanding statement to the contrary in the brief of plaintiff in error, to contradict and supplment their own records and make full explanation of his version of the receipts and expenditures of the trust funds. This testimony was proper and it, too, was received without objection as to its competency.

Error is further assigned to the exclusion of four certain exhibits tendered by defendants. These exhibits are not set out in the abstract of record nor adequately described in the brief. Exhibits 8, 9, and 13 are letters from Stanland to Bagnall as to weather conditions and road conditions at the mine. Any such condition might constitute an excuse for failing to ship ore, but would constitute no justification for representations that ore was being shipped when such was not the case. Exhibit 12 purports to be a letter from Stanland to Bagnall, not properly identified, which was offered to corroborate the testimony of defendant Jones to the effect that Stanland refused to accept checks of the Bonita Trust and demanded that all payments be made by Bagnall. Since this was not an issue in the case, was not disputed, and was no part of a defense to the charges set out in the bill of particulars, it was properly rejected by the court. Finally it is urged that defendant was unduly limited and hampered in the presentation of his defense. We have patiently read the nearly 2,500 folios of testimony and the many exhibits received in this case. Plaintiff in error has overlooked the fact, as appears from the long record, that he was permitted to explain the very matters which he now contends he was not allowed to

explain. From careful study of the record we are convinced that the defendant had a fair trial and that the judgment should be affirmed. It is so ordered.

MR. JUSTICE HAYS and MR. JUSTICE LUXFORD not participating.

MR. JUSTICE HILLIARD and MR. JUSTICE ALTER dissent.