STATE OF IOWA, Appellee, v. HAROLD CARLSON, Appellant.

CRIMINAL LAW: Evidence—Jail Delivery—Cause of Detention. On a prosecution for murder resulting from the attempt by prisoners in jail to escape, the State is privileged to show the reason for the defendant's detention in the jail.

CRIMINAL LAW: Parties to Offense—Accessories Before Fact—Evidence. The distinction between an accessory before the fact and a principal does not exist in this state. Evidence reviewed, and held to show that several persons engaged in a jail delivery were principals, and all guilty of a murder in connection therewith.

CRIMINAL LAW: Accomplices—Corroboration. Principle reaffirmed that the corroboration of an accomplice may be by circumstantial evidence, and that such corroboration need not go to every point on which the accomplice testifies.

Headnote 1:  30 C. J. p. 181.  Headnote 2:  16 C. J. p. 121; 29 C. J. p. 1063; 30 C. J. p. 303.  Headnote 3:  16 C. J. pp. 704, 705.

Headnote 2:  1 R. C. L. 145.  Headnote 3:  1 R. C. L. 171.

*Appeal from Dubuque District Court.—*P. J. NELSON, Judge.

FEBRUARY 15, 1927.

Trial on an indictment for murder in the first degree, resulting in a verdict of murder in the second degree. The defendant was given a life sentence.—*Affirmed.*

*Ed C. Tschudi,* for appellant.

*John Fletcher,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, and *Allen J. Kane,* County Attorney, for appellee.

DE GRAFF, J.—On November 3, 1925, the grand jury of Dubuque County, Iowa, jointly indicted Harold Carlson, Donald Kerdell, Dorrance E. Lyons, and Henry Truda for the crime of murder. The act upon which the indictment is predicated resulted in the death of Leo P. Hemmer, who was at the time the jailer of the Dubuque County jail.

It appears that, on the morning of October 12, 1925, about 35 prisoners were confined in said jail, including the defendants named in the instant indictment and one Earl Stearns, who fired the shots causing the death of Jailer Hemmer. The act giving rise to the indictment herein was a jail delivery. Stearns was subsequently shot and killed in Illinois. The codefendant Dorrance E. Lyons was convicted of first-degree murder, and sentenced to life imprisonment. This judgment was affirmed by this court. *State v. Lyons,* 202 Iowa 1195.

The defendant, Harold Carlson, alias Clarence Olson, was held in the Dubuque County jail, at the time in question, on a mittimus, pending an investigation by the grand jury of Du-

1. CRIMINAL LAW: evidence: jail delivery: cause of detention.

buque County on a charge of robbery, as he was unable to furnish bail in the sum of $5,000. The appellant, Carlson, contends that the State was not legally privileged to show the reason for his detention in the county jail at and prior to the morning of October 12th, when the fatal shooting occurred. We do not accept this viewpoint. Motive for a criminal act is always a proper subject of inquiry, although not an essential ingredient of the crime charged. Clearly, it was competent to show that appellant was an inmate of

the jail at the time, and the challenged evidence did no more than to prove that the appellant was charged with a crime, and not his conviction thereof. The fact proved was but an incident of the facts attending the crime for which he was indicted and placed on trial.

The numerous brief points of appellant, so far as the same are reviewable in this court, focus about one proposition, to wit, the sufficiency of the evidence to sustain the verdict. The underlying and fundamental theory of this case is conspiracy, and the ultimate question involves the competency and the weight of the evidence to sustain this theory. There is no conflict in the testimony as to the proximate and causative facts and circumstances surrounding the death of Jailer Hemmer. When the State rested its case, the defendant rested.

2. CRIMINAL LAW: parties to offense: accessories before. fact: evidence.

The evidence establishes that the codefendant Lyons had been released from the jail on October 8, 1925, and that, prior and subsequent to his release, there had been an understanding between him and Stearns, Carlson, Kerdell, and Truda that he should procure a revolver and furnish same to these men for the purpose of effecting an escape from jail. It is undisputed that Lyons did this. He was paid $4.50 by these men to purchase the revolver, and on the very day he was released (October 8th), he stole a 25-caliber Colt automatic, and on that evening went to the county jail, paid a visit to Truda, and informed him that he had the gun.

According to Truda's testimony, Stearns was talking "about having Lyons getting the gun, and I consented that I would ask him. Carlson wanted him to bring a gun or powder, and we talked to Lyons, and he got a gun in. We talked three or four days before Lyons went out. I talked to Lyons on the 8th, and he told me he had the gun. I went back and told Stearns, and he went upstairs and got a cord, and came down into Stearns' cell and gave Carlson the cord. Carlson went up to the cage, and I followed, and then he shot the cord out of the jail house. Carlson pulled the package in, and went into Stearns' cell, and gave it to Stearns. Stearns, Kerdell, and myself planned to break jail on Sunday, but that failed, and we planned it for Monday morning [October 12th]. I was to get the coffeepots, and Carlson was to watch that nobody tackled

Stearns, who was to hold up Hemmer and bring him inside, and then we would go out."

This plan was carried out, with the exception that Stearns shot the jailer, immediately prior to the escape of Stearns, Kerdell, and Lyons from the jail.

It is further shown that these men, while they were in jail, were in conference together quite frequently. One Brown, an inmate of the jail, testified that he observed the visitor to Truda on the evening of October 8th, and that at that time Truda called Carlson to the door. These codefendants were observed together at the tables, at the stove, and in Stearns' cell, prior to October 8th. Sheriff Kennedy also observed the actions of these men in the jail. His method of observation was through a little slide or peek hole, through which he could look down over the jail. He testified:

"I have noticed Olson going in and out of Stearns' cell. I have noticed him walking the floor with Stearns. I have also noticed Lyons going in and out of Stearns' cell, and Truda, and Kerdell, and I have noticed them at different times, walking together and eating together. These observations were prior to October 8, 1925."

All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet its commission, are indicted and tried as principals. Section 12895, Code of 1924. Whatever connection a defendant has in the commission of a crime may be established by circumstantial evidence. *State v. Brown*, 130 Iowa 57. This is also true in proving the commission of a crime on the theory of conspiracy, or the crime of conspiracy itself. *State v. Priebe*, 198 Iowa 609. When a crime is a result of a conspiracy, all who participate therein are liable, although not participating in the act itself. *State v. Pasnau*, 118 Iowa 501; *State v. Smith*, 106 Iowa 701; *State v. Munchrath*, 78 Iowa 268.

It is the claim of the appellant that Truda, who turned State's evidence, is an accomplice, and that the statutory corroboration is lacking. See Section 13901, Code of 1924. Corroboration, as required by the statute, may be shown by circumstantial evidence, and it is not necessary that the accomplice be corroborated as to every fact to which he testifies. As bearing on this proposi-

3. CRIMINAL LAW: accomplices: corroboration.

tion, see *State v. Hennessy,* 55 Iowa 299; *State v. Russell,* 90 Iowa 493; *State v. Hall,* 97 Iowa 400; *State v. Bosch,* 172 Iowa 88; *State v. Gaskill,* 200 Iowa 644; *State v. Lozier,* 200 Iowa 652.

A careful review of the evidence discloses that it is amply sufficient to sustain the verdict, and, this being the conclusion, there is no occasion to give the matter further recital or discussion.

In conclusion, it may be said that the exceptions to the instructions are not within the rule of statute. Section 11495, Code of 1924. The reason is suggested by the assignment itself, to wit: The court erred in giving and reading to the jury each one of its instructions so made and read, numbered from 1 to 34, inclusive.

We find no reversible error, and the judgment entered is— *Affirmed.*

EVANS, C. J., and ALBERT and MORLING, JJ., concur.