STATE OF IOWA, appellee, v. PETER GEORGE THEODORE, appellant.

No. 52368.

(Reported in 150 N.W.2d 612)

May 2, 1967.

Rehearing Denied, July 10, 1967.

McCarthy & Hart, of Davenport, for appellant.

Richard C. Turner, Attorney General, Ronald A. Riley and Stephen C. Robinson, Assistant Attorneys General, and David P. Miller, Scott County Attorney, for appellee.

Stuart, J.—Defendant was convicted of conspiracy to commit a felony (larceny and/or embezzlement) in violation of sec-

tion 719.1, Code of Iowa. He has appealed from the judgment entered on the jury verdict.

For three years prior to October 30, 1964, he had hauled meat products from the Oscar Mayer packing plant in Davenport to its plant in New Orleans, Louisiana, with his truck and trailer. While the truck was being loaded on October 29 and 30, 1964, a company official received information which caused him to investigate the contents of the trailer.

After the trailer was loaded and ready to go, it was weighed and found to exceed the weight called for in the bill of lading. The seal was broken and the contents removed and audited. It was discovered the truck contained 91 boxes of loins, five boxes of cooked hams, three boxes of smoked hams and one box of shankless hams which were not included in the invoices or bill of lading.

Under company procedure, the truck operator had nothing to do with the loading of his truck. This was done by company employees. The loading crew testified they loaded meat on defendant's trailer not called for in the invoice at his request. They testified they had done so on former occasions and defendant had paid them for it. They pleaded guilty to conspiracy and were given three-year suspended sentences.

I. Defendant claims he was entitled to a directed verdict or judgment notwithstanding the verdict on the ground that there was no corroboration of the testimony of accomplices as required by section 782.5, Code of Iowa, which provides:

"A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

"It has been held that the declarations of a coconspirator or codefendant can have no greater force than the testimony of an accomplice or codefendant, and hence evidence of statements of a coconspirator or codefendant tending to inculpate accused is not, in the absence of corroborative evidence, sufficient for a conviction." 22A C. J. S. 1191, Criminal Law, section 785. See State v. Davis, 230 Iowa 309, 316, 297 N.W. 274.

The State recognizes the requirement of corroboration but claims there is sufficient evidence other than the testimony of the coconspirators to meet the statutory requirement.

"* * * the corroboration need not be of every material fact testified to by an accomplice, but is sufficient if it can fairly be said that the accomplice is corroborated in some material fact legitimately tending to connect the defendant with commission of the offense." (Citing cases) State v. Geier, 249 Iowa 475, 479, 87 N.W.2d 318; State v. Latham, 254 Iowa 513, 515, 117 N.W.2d 840.

"The evidence adduced to corroborate an accomplice need not be strong and any corroborative evidence legitimately tending to connect the accused with the commission of the crime and thereby lend support to the credibility of the accomplice is sufficient. It is not necessary that the testimony offered as corroboration be entirely inconsistent with innocence." (Citing cases) State v. Clay, 222 Iowa 1142, 1146, 271 N.W. 212, 215, quoted with approval in State v. Latham, supra, loc. cit. 516; State v. Proost, 225 Iowa 628, 631, 632, 281 N.W. 167.

"* * * the entire conduct of the defendant may be looked to for corroborating circumstances." State v. Michaels, 95 Ariz. 374, 378, 390 P.2d 904, 907; State v. Latham, supra.

John Robert McCommon, a truck operator, testified he had known defendant for two years. He recalled meeting defendant near Chester, Illinois, in October 1964. Defendant told the witness there was some stuff on his truck that he wanted to get off. When McCommon stopped at Roy's truck stop near New Madrid, Missouri, for propane, defendant and his assistant also came in. They broke the seal on McCommon's truck and took off five boxes of ribs and put them on defendant's trailer. "They closed the door and stuck the seal in there, and he (defendant) told me there was five boxes of bacon on there and the hams, that I could have them, and I made a statement to them I didn't want them, and he didn't snap the seal, and I snapped the seal back—the one that was on, that they put on, I snapped it, and then I went on to Little Rock and unloaded and came back to Memphis and dropped my trailer at Memphis and the meat was still on the trailer."

Mr. Maas, floating transportation manager for Oscar Mayer, testified of a telephone conversation with defendant on November 4, 1964: "Mr. Theodore called him and said he was very much concerned about the people involved in the particular incident and he wanted to know if there was something he could do to take care of the incident so that the people that were involved would not get implicated more and lose their jobs. $3500 was mentioned."

This phone conversation was confirmed by Mr. Hartung, operations manager for Oscar Mayer, who heard it over an extension phone. However, he placed the date as October 30 or 31. He testified: "Peter Theodore indicated to Mr. Maas that he was very concerned over the difficulties which our terminated employees were encountering on a personal basis because of the loading incident and that he was so concerned that he would be willing to make payment to the company of several thousand dollars of savings which he possessed if we did not in fact prosecute those employees."

We believe these items of evidence sufficiently corroborate the testimony of the coconspirators to connect defendant with the conspiracy by evidence outside the conspirators themselves. This evidence alone would not be enough to convict but is such that it lends credibility to the testimony of the accomplices. The jurors then would be free to believe all of the testimony of the coconspirators if they wished.

Defendant discounts the importance of the telephone conversation. "This offer, humane or even quixotic, does not corroborate anything. The fact that the appellant had a compassionate feeling for the men he had come to know at Oscar Mayer's and a desire to help them in their trouble does not impute a bad or criminal motive to him." We do not agree.

It was for the jurors to consider this evidence and determine for themselves the reasons for the phone call. They could have concluded it was "humane or even quixotic." They could also have considered this offer as evidence that he was involved in the conspiracy. Defendant had no obvious close connections with the employees he sought to help. There was no discernible reason for him to offer his life savings to Oscar Mayer if it would

take no action against them. It is not unreasonable to conclude under these circumstances that he had a personal interest in seeing the charge dropped. Such an offer tends to connect defendant with the conspiracy even though it is not entirely inconsistent with his innocence.

II. Defendant claims McCommon's testimony was improperly admitted into evidence because it was irrelevant and because evidence of other crimes separate and distinct from the one with which he was charged could not be given in the trial of the latter.

We believe this testimony was relevant to the issues present here. Outside evidence was necessary to connect defendant with the conspiracy which had been established. The record would have been stronger had it been shown the meat taken from McCommon's truck came from the Oscar Mayer plant. However, the evidence was sufficient to connect this defendant with a scheme whereby meat, not covered by invoice or bill of lading, was placed on a truck to be removed later by breaking the seal before the destination was reached. This shows conduct similar to that which defendant is accused of conspiring in here. We believe the testimony was relevant and furnished corroboration for the testimony of the coconspirators.

"The test of admissibility of evidence is whether it has a legitimate bearing upon any point in issue, and should not be excluded because it shows or tends to show the commission of another crime. [Citing cases]." State v. Meeks, 245 Iowa 1231, 1243, 65 N.W.2d 76.

In State v. Keul, 233 Iowa 852, 855, 856, 5 N.W.2d 849, 852, the State was allowed to introduce certain evidence of alleged transactions between those accused of conspiracy and third parties similar to the transactions upon which the charge was based. We said: "Some of this evidence may have tended to show the commission of offenses other than that for which appellant was on trial. The general rule is that the State is not permitted to introduce evidence to prove the accused has committed offenses not charged in the indictment. To this rule there are certain exceptions, one of which is that evidence bearing upon the question of intent is not rendered inadmissible because

it may incidentally tend to prove defendant's guilt of some other crime. In this case the intent with which the alleged conspiracy was formed was an essential element. To show intent (and perhaps for other purposes within the exceptions to the general rule) the evidence in question appears relevant to appellant's guilt of the crime charged. Therefore, the fact that some or all of said transactions in themselves may have been substantive offenses did not render such evidence inadmissible [citing cases]."

In State v. Williams, 245 Iowa 494, 504, 62 N.W.2d 742, we said: "It is the general rule that the State cannot prove against a defendant any crime not alleged in the indictment. Exceptions to the rule, frequently recognized, are that such evidence is proper to show intent, motive, absence of mistake or accident, common scheme and identity of person. State v. Vance, 119 Iowa 685, 94 N.W. 204; State v. Snyder, 244 Iowa 1244, 59 N.W.2d 223, and citations. But there are broader and more general exceptions. State v. Rand, 238 Iowa 250, 264 to 272, 25 N.W.2d 800, 807 to 811, 170 A. L. R. 289, 300, states evidence of the commission of another crime ordinarily is irrelevant to the issues then being tried, that proof of an independent crime may be prejudicial to defendant and courts should be vigilant to exclude such evidence when it is irrelevant or there is a fair doubt of its relevance. 'It is thus seen that the admissibility of such testimony is all a matter of relevance.' "

It is generally recognized that the trial court has wide latitude in admitting evidence of other offenses in prosecutions for conspiracy. 22A C. J. S. 810, Criminal Law, section 691(8). In Jones v. People, 118 Colo. 271, 277, 278, 195 P.2d 380, 383, 384, the Colorado Supreme Court said:

"In conspiracy cases unusual latitude is permitted in the admission of evidence where the prosecution must necessarily depend on circumstantial evidence in order to establish criminal intent. In such case the prosecution may show the entire history of the conspiracy, even though other crimes may be involved, if the evidence tends even remotely to establish the ultimate fact, and the receipt of such testimony rests largely in the discretion of the trial court.

"* * * The evidence as to the Caruthers 'loan' to Jones and Bagnall tends to establish both their association in a conspiracy and a general fraudulent intent."

· The following are but a few of the many cases involving the charge of conspiracy in which evidence of other offenses was permitted. People v. McManus (1960), 180 Cal. App.2d 19, 4 Cal. Rptr. 642, 655; People v. Darnell (1950), 97 Cal. App.2d 630, 218 P.2d 172, 175; People v. Simos (1931), 345 Ill. 226, 178 N.E. 188, 192; United States v. Iacullo, 226 F.2d 788, 793; Commonwealth v. Evans, 190 Pa. Super. 179, 154 A.2d 57. See comments by Chief Justice Warren in his separate opinion in Spencer v. Texas, 385 U. S. 554, 87 S. Ct. 648, 17 L. Ed.2d 606, 621.

We hold the evidence of the transaction with McCommon was relevant to the charge of conspiracy and therefore was admissible although it tended to show defendant was guilty of an offense other than that for which he was being tried.

█ III. Defendant claims there is no testimony from which the jury could find the value of the property involved in the conspiracy exceeded $20, and, therefore, there was no proof the larceny or embezzlement was a felony. The county attorney neglected to ask any witness the value of the excess meat found on defendant's truck. There was no direct evidence of value. However, there was evidence of the quantity of meat products found in the trailer for which there was no invoice. The jurors could find from their common knowledge and experience that 91 boxes of loins, five boxes of cooked hams, three boxes of smoked hams and one box of shankless hams were worth more than $20 in today's market. There is no merit in this contention.

█ IV. Defendant contends the trial court erred in permitting the county attorney to ask leading and suggestive questions. "The trial court is in a better position than we to observe the circumstances that may justify the asking of such question and the presumption of judicial fairness and proper discretion will prevail unless there is a manifest showing to the contrary [citing authorities]." State v. Long, 256 Iowa 1304, 1310, 130 N.W.2d 663. There was no such showing here.

■    V.   One of the coconspirators testified to a conversation with defendant after the conspiracy had terminated in which defendant prevailed upon the witness to sign a statement stating defendant was not involved in the conspiracy.  Defendant claims this conversation was not admissible and cites authorities which hold declarations or acts of one coconspirator must have been made while the conspiracy was in progress to be admissible.  State v. Gilmore, 151 Iowa 618, 132 N.W. 53, 35 L. R. A., N. S., 1084;  Fiswick v. United States, 329 U. S. 211, 67 S. Ct. 224, 91 L. Ed. 196;  Krulewitch v. United States, 336 U. S. 440, 69 S. Ct. 716, 93 L. Ed. 790.

Defendant misinterprets these authorities.  They apply to declarations which would otherwise be inadmissible as hearsay.  If made during the progress of a conspiracy, they are admitted as an exception to the hearsay rule.

The United States Supreme Court in Krulewitch v. United States, supra, makes this clear.  The government sought to introduce hearsay statements of a coconspirator made in defendant's absence after the conspiracy had ended.  The court said:

"The testimony thus stands as an unsworn, out-of-court declaration of petitioner's guilt.  This hearsay declaration, attributed to a co-conspirator, was not made pursuant to and in furtherance of objectives of the conspiracy charged in the indictment, because, if made, it was after those objectives either had failed or had been achieved.  Under these circumstances, the hearsay declaration attributed to the alleged co-conspirator was not admissible on the theory that it was made in furtherance of the alleged criminal transportation undertaking.  [Citing cases]

"* * * It is firmly established that where made in furtherance of the objectives of a going conspiracy, such statements are admissible as exceptions to the hearsay rule.  This prerequisite to admissibility, that hearsay statements by some conspirators to be admissible against others must be made in furtherance of the conspiracy charged, has been scrupulously observed by federal courts."  Loc. cit. 442, 443 of 336 U. S., 718 of 69 S. Ct., 93 L. Ed. 794.

The conversation testified to here occurred in defendant's presence and he took part.  The testimony was not hearsay and

was admissible evidence. There was no need to qualify the evidence under the foregoing exception to the hearsay rule.

As we have found no reversible error, this case is affirmed. —-Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.