STATE of Iowa, Appellee,

v.

John HARRINGTON, Appellant.

No. 53742.

Supreme Court of Iowa.

June 23, 1970.

Henry T. McKnight, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Roxanne Conlin, Asst. Atty. Gen., and Ray Fenton, County Atty., Des Moines, for appellee.

MOORE, Chief Justice.

Defendant, John Harrington, appeals from his conviction and sentence for the crime of breaking and entering in violation of section 708.8, Code, 1966. He asserts the evidence of his identity as a participant was insufficient as a matter of law and his cross-examination was improper and prejudicial. We affirm.

About 6:30 p. m. November 10, 1968 Reverend William H. Burnette, a housing project security guard, on his first round observed the trailer office building at 801 15th Street in Des Moines was intact. As he drove near the structure on his second round he saw two figures in the trailer. He stopped his vehicle approximately six feet from the trailer door and directed his spotlight thereon. He observed the door was damaged and the glass broken out. The two men in the trailer came to the door directly in Burnette's line of vision. Although it was then snowing he testified he saw their faces for about two and a half seconds. He observed both were negroes. One man then ran in a northwesterly direction from the trailer and was not taken into custody until several days later. The other man, Norman Eugene Norfleet, was arrested on the premises by Burnette.

Burnette described the man who ran from the scene as tall, light complected with a heavy mustache and wearing boots. He gave this description to police officers a few minutes later. He stated he had seen this man on prior occasions at a drug store and a carwash in the area but did not know him then by name. On direct examination Burnette identified defendant as the man he saw in the trailer doorway and who ran from the scene. He was subjected to rather vigorous cross-examination by defendant's trial counsel and again repeated his identification and stated he learned defendant's name from Norfleet at the scene when Norfleet tried to explain why the two men were in the trailer. On redirect examination Burnette repeated his in-court identification of defendant.

 I. The rules governing our consideration of a claim of insufficient evidence to support a conviction are well established. The evidence is to be viewed in the light most favorable to the State. It is the fact finder's function (usually the jury's), not ours, to decide disputed fact questions and to determine the credibility of witnesses. Its finding of guilt is binding upon us unless we are satisfied it is without substantial support in the evidence or is clearly against the weight thereof. State v. Stodola, 257 Iowa 863, 865, 134 N.W.2d 920, 921; State v. Agee, 257 Iowa 1345, 1348, 136 N.W.2d 419, 420; State v. Frink, 255 Iowa 59, 63, 64, 120 N.W.2d 432, 435; State v. Poffenbarger, 247 Iowa 552, 554, 74 N.W.2d 585, 586 and citations.

In support of his contention the evidence was insufficient as to identifying him as one of the perpetrators of the crime defendant cites and relies on our holdings in State v. Hedgpath, 142 Iowa 44, 120 N.W. 468 and State v. Snyder, 137 Iowa 600, 115 N.W. 225. In each we held the evidence regarding identification of the defendant was insufficient as a matter of law. In Hedgpath two individuals were seen near a breaking and entering but no one saw their faces. In Snyder the only identification of defendant was by general build and size. His facial features were not observed. These cases are readily distinguishable factually from the case at bar.

 The identification of defendant by Reverend Burnette was based on his observation of facial features, complexion, size, build and some prior familiarity with de-

fendant's appearance. Under the above stated legal principles the question of defendant's identity was for the jury.

II. Defendant next argues he was subjected to improper and prejudicial cross-examination. As a witness on direct examination defendant stated his name was John Harrington and he lived at 962 W. 26th street. This followed:

"Q. Mr. Harrington, on November 10, 1968, at any time during that day did you have occasion to be in the area of 801–15th Street. A. Not to my knowledge, no." He was then released for cross-examination and was first asked if he had ever been to 954–16th Street. He answered he had relatives living there. When asked if he had occasion to be there trial counsel objected on the ground that it was irrelevant, immaterial and exceeds the scope of direct examination. The court overruled the objection. Defense counsel then asked that he have an objection stand to "all this line of questioning as irrelevant and immaterial and exceeds the scope of direct examination". The trial court and assistant county attorney agreed. Defendant answered, "No, I have a sister that lives at 841 W. 16th." He stated on further cross-examination he had been at his sister's house several times in the fall of 1968 and had visited people in that area. He was asked if he had visited at 954–16th and then answered: "I'm not familiar with this address, I really couldn't say." Contrary to his earlier testimony he then denied having relatives living at that address. He denied visiting a girl friend in the area.

■ The assistant county attorney in further cross-examination established defendant knew Norman Norfleet, he owned no boots but sometimes wore his brother's when washing cars, he had heard the police were looking for him but on inquiry was advised they had no warrant, when arrested he had not attempted to flee, he first gave the police the name "Paul Bryant", an alias he used, but had not given his name as "Paul Corman". He denied ever seeing Reverend Burnette before the trial. We find no objection to this latter cross-examination unless it can be said the standing objection was sufficient. The standing objection specified "this line of questioning" and when made the cross-examination was being directed at defendant's knowledge of the immediate area around the scene of the breaking and entering. The standing objection, on which defense counsel failed to get any rulings, was insufficient to alert the court he was objecting to the matters covered by the later cross-examination. No authority need be cited for the well established rule that objections or issues not raised in the lower court cannot for the first time be considered on appeal.

■ In our recent case of State v. Broten, Iowa, 176 N.W.2d 827, we analyze at considerable length the statute, Code section 781.13, and our many cases dealing with the realm of proper cross-examination of a defendant who has elected to testify in a criminal case. As we point out therein, supported by numerous citations, these rules are well established. Section 781.13 which provides cross-examination by the State of a defendant shall be strictly confined to matters testified to on direct examination, does not place him on a different footing than any other witness with respect to his memory, history, motive or matters affecting his credibility. A defendant who offers himself as a witness subjects himself to the same rules on impeachment and credibility as other witnesses. The extent to which cross-examination of a defendant may be pursued is largely a matter of the trial court's discretion and its ruling will be disturbed only upon a clear showing that such discretion has been abused.

■ The record does not disclose an abuse of the trial court's discretion regard-

ing questions propounded on cross-examination to which objections were properly directed. We find no reversible error.

Affirmed.

All Justices concur.