**STATE of Iowa, Appellee,**

v.

**Wayne JENNINGS, Appellant.**

No. 54612.

Supreme Court of Iowa.

Feb. 25, 1972.

Bernard J. O'Malley, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Richard N. Winders, Asst. Atty. Gen., Marvin V. Colton, County Atty., for appellee.

RAWLINGS, Justice.

Defendant, Wayne Jennings, was charged with the crime of conspiracy to wrongfully injure rights in property of an automobile insurance carrier. Motions to dismiss for failure to comply with requests for speedy trial were overruled. Trial jury returned a guilty verdict. Defendant's arrest of judgment and new trial motions were overruled. From judgment entered he appeals. We affirm.

The charge made is to the effect Jennings conspired with Michael (Mike) Curtis and Donald Clark to destroy Kenneth Long's automobile, thereby enabling him to recover from his insurer for the loss.

As a State's witness Long testified, in July 1969, he arranged with Curtis for the theft and disposal of the former's 1968 Chevy II car. Pursuant to agreement thus made Long obtained and gave Curtis duplicate keys to the vehicle, then awaited instructions. July 26 Long was directed to park the car near Danny Bimbi's residence and everything would then be taken care of by "some people". Long did as directed. The same evening he started for Burlington with Bimbi, Curtis and Kenneth Lindly. They stopped on the way at Jennings' parents' home. There Curtis left the Bimbi car and talked to Jennings. Michael Mullins later joined the group at Moravia.

That night Bimbi, Curtis, Mullins, Lindly and Long stayed in Burlington. On returning to Centerville the next day they went to Bimbi's home. Long's car was then gone. He promptly reported the theft to police. Several days later Long, accompanied by Deputy Sheriff King, went to the Centerville Body Shop. There Long saw and identified his automobile which had been badly burned. He later filed a claim for theft insurance coverage and was paid.

Another prosecution witness, Donald Clark, stated he, Curtis and Jennings had an arrangement whereby stolen cars were brought to Clark's home, there stripped and disposal of the bodies effected. Several automobiles were so handled by these parties. Sometime in July 1969, Jennings visited Clark at the latter's home. Jennings then displayed a set of car keys and told Clark a 1968 Chevy II would be delivered to him that night while he was absent from home. The next morning Clark found in his garage a Chevy registered in the name of Kenneth Long. While Clark was in the process of stripping it, his wife heard a radio report to the effect an automobile had been stolen and told Don to get rid of the car. Clark then reassembled the vehicle, drove to a secluded spot and burned it, but kept the keys in order to convey a stolen job impression. He later identified and gave these keys to the investigating sheriff. Thereafter Jennings again visited Clark at his home and became angry upon learning the Chevy had been burned before being stripped because Jennings wanted the motor. The car was discovered, towed to the Centerville Body Shop and there identified by Clark. He was later charged with receiving stolen property, pled guilty and was sentenced.

Sheriff Robinson testified a car he believed to be a Chevelle was found badly burned near Clark's residence. It was towed to the Centerville Body Shop where Robinson fitted one key in the trunk. The ignition had been so melted by heat as to preclude any attempt to there fit the other key.

Daniel Bimbi, as a State's witness, said in July 1969, exact date unknown, he left Centerville and headed for Burlington accompanied by Curtis, Lindly and Long. Before their departure Bimbi saw Long's car parked near the former's residence. On the way to Burlington they stopped at Jennings' parents' home. There Curtis left the car and talked with Jennings. When Bimbi inquired of Long as to the reason for this the latter replied something is

going to happen. At Moravia they picked up Mullins. Bimbi also testified when these men returned from Burlington the next day he was not surprised to find Long's car gone.

The State then rested. Defendant's motion for directed verdict, based on absence of essential corroboration, was overruled.

Defense evidence followed, partly supportive of a noticed alibi, in part contradicting that introduced by the State. Those testifying for defendant were Mullins, Curtis, Mr. and Mrs. Wendell Jennings (defendant's parents), and Barbara Jennings (defendant's wife).

Thereupon the State presented rebuttal evidence. First called was Glenna Hoover, mother of Jean Clark, Don's wife. This witness testified her rural home is located near the Clark residence. About 2:00 the morning of July 27th she saw two automobiles, one of which sounded like that previously seen being operated by Jennings, drive in "over at Don's". A few minutes later one car left.

Jean Clark, another prosecution witness, said Jennings came to her home somewhere between 11:30 and 12:30 the morning of Saturday July 26th and talked to Don. She also saw Jennings there talking to Don the following Sunday forenoon. The next day Mrs. Clark heard radio reports regarding a stolen car, went to the garage, there saw a blue Chevy and told Don to get rid of it. He admitted the car had been stolen, later telling her it had been burned.

Earl Dean Fick, casualty claims supervisor for Long's insurance carrier, testified the named insured filed claim for theft loss of his car.

Thereupon the State finally rested. Defendant's renewed motion for directed verdict was again overruled.

As aforesaid trial jury returned a guilty verdict. Defendant's subsequent motions in arrest of judgment and for new trial were overruled and he was sentenced.

In substance the issues raised on appeal are, trial court erred in overruling (1) defendant's motion for directed verdict predicated on absence of sufficient corroborative evidence, (2) defendant's pretrial motion to dismiss for want of requested speedy trial. These assignments will be considered in reverse order.

I. Although Jennings initially demanded speedy indictment and trial, the sole issue asserted here goes to the matter of claimed delay in bringing the case on for hearing after filing of a county attorney's information.

In material part The Code 1966, Section 795.2, as amended by Regular Session, Sixty-Second General Assembly, Chapter 400, Section 259, here applicable, provided:

"If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial within sixty days after the indictment is found, the court must order it to be dismissed, unless good cause to the contrary be shown."

It inceptionally appears the above quoted statutory enactment, on which Jennings relies entirely, relates to the period of time within which a criminal prosecution shall commence after a person has been accused by indictment or information. Compare Code § 795.1 regarding speedy indictment. See Code § 773.22; State v. Abodeely, 179 N.W.2d 347, 355 (Iowa). But see United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 463–466, 30 L.Ed.2d 468; State v. Bowers, 162 N.W.2d 484, 487 (Iowa). See generally State v. Allnutt, 156 N.W.2d 266, 268–270 (Iowa); McCandless v. District Court, 245 Iowa 599, 603–605, 61 N.W.2d 674; ABA Standards, Speedy Trial, Approved Draft, § 2.1; Annot. 85 A.L.R.2d 980.

The record before us discloses the aforesaid speedy trial demand was first filed

May 22, or eight days after presentment of the county attorney's information.

June 1, Jennings was arraigned and entered a not guilty plea. That same date the county attorney directed a communication to Judge McGiverin inquiring as to availability of a presiding judge for trial of the case.

September 24, defendant filed a motion to dismiss for want of speedy trial. To this the State entered written resistance which, in essence, discloses as reasons for delay in bringing the case on for hearing, (1) partial incapacitating illness of one judge in that judicial district; (2) vacation absence of a second judge; (3) on his return the vacation leave of two other judges, which resulted in only one judge actively serving; (4) existence of a pressing case backlog; (5) absence of any trial session of court subsequent to filing of the information; (6) release of defendant on bond at time of arraignment; (7) assignment for trial of the instant case to begin October 6, 1970.

Thereupon trial court overruled defendant's dismissal motion.

II. Clearly Jennings was not brought to trial within 60 days after filing of the information. So the difficult question here involved is whether the State's resistance discloses sufficient "good cause" to support the overruling of defendant's motion to dismiss.

In Dickey v. Florida, 398 U.S. 30, 90 S. Ct. 1564, 26 L.Ed.2d 26, the court ordered dismissal of a state robbery charge because of undue trial delay violative of Sixth Amendment rights. There the accused, while a federal prisoner had, for more than four years, unsuccessfully requested a prompt hearing on the accused offense. It is thus apparent the cited case and that now before us are not factually comparable.

There is, however, one observation in Dickey which is here pertinent. After recognizing the right to speedy trial is rooted in hard reality the court said at 398 U.S. 38, 90 S.Ct. 1569: "Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable."

Also, in a special concurring opinion, 398 U.S. 47–48, 90 S.Ct. 1574, Mr. Justice Brennan stated:

"What are the criteria to be used in judging the constitutionality of those delays to which the safeguard applies? This Court has stated that '[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, *supra*, 198 U.S. at 87, 25 S.Ct. at 576, 49 L.Ed. 950. We have also observed that '[w]hile justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed. 2d 1041 (1959)."

See United States v. Ewell and Dennis, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L. Ed.2d 627.

On the subject at hand see generally 21 Drake L.Rev. 345; 60 Geo.L.J. 281, 348.

In support of his position Jennings leans heavily if not entirely on State v. Bowers, 162 N.W.2d 484 (Iowa). That case is readily distinguishable and accords no support to the position here taken by this defendant. In Bowers the accused made timely demand for speedy trial, indictment was returned 44 days later, and defendant, invoking Code § 795.1, moved for a dismissal. To this the State filed neither resistance nor offered reason for a self-evident delay. The motion to dismiss was overruled and trial resulted in a conviction. Under the foregoing peculiar circumstances we reversed on appeal, directing dismissal of the prosecution.

■ Admittedly any inordinate delay, absent good cause, in the presentment of a

criminal charge and attendant prosecution cannot be approved. To that end all judges and court personnel must accord criminal cases priority insofar as reasonably possible. See ABA Standards, Speedy Trial, Approved Draft, §§ 1.1–1.3. See also State v. Chuning, 199 Kan. 215, 428 P.2d 843, 845–846.

On the other hand, anyone interested in the matter of trial procedures is fully aware of the fact that our state dockets, in recent years, have become alarmingly congested despite all remedial efforts thus far made. By the same token trial judges are confronted with a constantly escalating work load. Additionally, at the time here concerned, availability of judges presented, and in some areas of the state still poses, a serious and difficult problem.

■ Delay resulting from congestion of a trial docket attributable to exceptional circumstances, and unavailability of prosecutor or trial judge, may constitute good cause for a reasonable trial delay. See ABA Standards, Speedy Trial, Approved Draft, § 2.3(b) (and comment).

■ Instantly, a relatively prompt trial was afforded under exigent circumstances constituting the good cause referred to in Code § 795.2. See Pines v. District Court, 233 Iowa 1284, 1302, 10 N.W.2d 574; State v. Ball, 277 N.C. 714, 178 S.E.2d 377, 380–381.

■ This does not mean, however, particularly under existing judicial districting, chronic crowded dockets, sickness of a trial judge, or unavailability of judges due to vacation schedules will alone suffice as good cause for trial delay. The public policy inherent in § 795.2 requires trial within 60 days absent good cause, and it is the State's duty to effectuate that policy.

Confining ourselves to the factual situation here involved we hold trial court did not err in overruling defendant's motion for dismissal due to claimed denial of a speedy trial.

III. As previously indicated Jennings, in course of hearing, and after return of the verdict, contended the State's evidence consisted of accomplice testimony insufficiently corroborated to justify submission of the case to a jury, or to support a conviction. He here takes the same position.

An orderly approach to this problem necessitates reference to some basic principles of law instantly applicable.

■ The crime of conspiracy is a combination or agreement between two or more persons to do or accomplish a criminal or unlawful act, or do a lawful act in an unlawful manner. It does not depend upon fulfillment of the act and may be established by direct or circumstantial evidence. See State v. Brown, 172 N.W.2d 152, 155 (Iowa); Stover v. Hindman, 159 N.W.2d 422, 425 (Iowa); State v. Keyser, 257 Iowa 73, 79, 130 N.W.2d 701; 3 Underhill's Criminal Evidence, §§ 855–861 (5th ed., Herrick); 16 Am.Jur.2d, Conspiracy, §§ 1, 36; 15A C.J.S. Conspiracy § 35(1).

IV. The Code 1966, Section 782.5, states:

"A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

■ An accomplice is a person who willfully unites in, or is in some way concerned in the commission of a crime. The general rule for determining whether a witness is an accomplice is if he could be charged with and convicted of the specific offense for which an accused is on trial. See State v. Wiese, 182 N.W.2d 918, 920 (Iowa); State v. Upton, 167 N.W.2d 625, 628 (Iowa); 1 Underhill's Criminal Evidence, § 175 (5th ed., Herrick); 21 Am. Jur.2d, Criminal Law, § 118; 23 C.J.S. Criminal Law § 786.

But something more than mere knowledge that a crime is contemplated, or mere personal presence at the time and place where committed, must be shown in order to make one an accomplice. And it must be established by a preponderance of the evidence that a witness was in fact an accomplice. See Langer v. United States, 76 F.2d 817, 827 (8th Cir.); State v. Daves, 259 Iowa 584, 586, 144 N.W.2d 879; State v. Huntington, 248 Iowa 430, 435, 80 N.W.2d 744; State v. Tippett, 244 Iowa 1350, 1353–1354, 60 N.W.2d 538.

V. Corroborative evidence may be either direct or circumstantial. See State v. Thompson, 241 Iowa 16, 23, 39 N. W.2d 637; State v. Carlson, 203 Iowa 90, 93, 212 N.W. 312; 1 Underhill's Criminal Evidence, § 183 (5th ed., Herrick).

And testimony offered as corroboration need not be entirely inconsistent with innocence. See State v. Theodore, 260 Iowa 1038, 1041, 150 N.W.2d 612.

VI. Whether there exists corroborative evidence adequate to meet the requirements of Code § 782.5, quoted supra, is a question of law for the courts, sufficiency thereof a fact issue for the jury. Furthermore, evidence introduced to corroborate an accomplice need be neither strong nor corroborative of every material matter, being sufficient if it legitimately tends to connect an accused with the crime charged and lends support to credibility of an accomplice. See State v. Morrison, 183 N.W.2d 696, 698 (Iowa); State v. Schlater, 170 N.W.2d 601, 603–604 (Iowa); State v. Theodore, *supra*; State v. Weaver, 259 Iowa 1369, 1373–1375, 147 N.W.2d 47; 1 Underhill's Criminal Evidence, § 184 (5th ed., Herrick). See also 21 Drake L.Rev. 331–335.

VII. Then too, as State v. Brown, 172 N.W.2d 152, 155 (Iowa), discloses: "In a criminal action the cause should be submitted to the jury and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge." See State v. Link, 171 N.W.2d 259, 260 (Iowa).

Additionally, we said in State v. McElhaney, 261 Iowa 199, 153 N.W.2d 715, 717: "It is true the trial court may sustain a defendant's motion for a directed verdict at the close of the State's case, but it is not required to do so, and no error can be predicated upon the court's failure to sustain that motion." Resultantly, all evidence of record is here considered.

VIII. Next to be dealt with is sufficiency of evidence to support the verdict.

This brings into play the summary of facts first above set forth. In that regard it is understood we there viewed the evidence in the light most favorable to the State regardless of any contradictions. Also, it is the fact finder's function, not ours, to decide questions of fact and determine credibility of witnesses. And a finding of guilt is binding on us unless without substantial support in the record. See State v. Werner, 181 N.W.2d 221, 222 (Iowa); State v. Harrington, 178 N.W.2d 314, 315 (Iowa); State v. Brown, 172 N.W.2d 152, 153 (Iowa); State v. Keyser, 257 Iowa 73, 75–76, 130 N.W.2d 701.

IX. Substantive proof of the crime charged is unquestionably abundant. It was, however, primarily established by accomplices Donald Clark and Kenneth Long. Resultantly we must now ascertain whether their testimony finds adequate corroboration in that of other nonaccomplice witnesses.

Trial court found Daniel Bimbi was not an accomplice. Mindful of the guiding precepts set forth above we agree.

Upon the same premise we now hold to like effect regarding Jean Clark. The same is, of course, true as to Glenna Hoover, Sheriff Robinson, and Earl Dean Fick.

357

Cumulatively the testimony of these last five named witnesses which tended to corroborate Clark and Long is:

1. Jennings' arrival at the Clark residence July 26, 1969, where he talked with Don.

2. Appearance of Long's car in front of Bimbi's home July 26, and its expected disappearance while he, Clark and Long were absent from Centerville overnight.

3. Appearance of two automobiles at Clark's home the early morning of July 27, one of them sounding like that previously seen being driven by Jennings, and the prompt departure of only one of these vehicles.

4. The finding by Mrs. Clark of a blue Chevy in the Clark garage the morning of July 28.

5. Discovery by peace officers of the Long car, badly burned, near Clark's home.

6. Delivery of duplicate keys thereto by Clark to Sheriff Robinson, one of which fit the burned car trunk.

7. The filing by Long of a claim for theft insurance coverage on his automobile.

We now hold the foregoing adequately tended to legitimately connect Jennings with the crime charged, and lent support to credibility of the accomplices. Stated otherwise, it constituted good and sufficient corroboration.

Trial court did not err in submitting this case to the jury, and the guilty verdict finds substantial support in the record.

Defendant's assignments of error are without merit.

Affirmed.

All Justices concur, except MASON and LeGRAND, JJ., who dissent.

MASON, Justice (dissenting).

I respectfully dissent.

The State has the burden of establishing good cause for the delay in bringing defendant to trial. Since it did not sustain this burden, I would reverse. See United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468.

LeGRAND, J., joins in this dissent.