# IN THE COURT OF APPEALS OF IOWA

No. 14-0020
Filed May 6, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**LAURA GABRIELLE SANTORO-PETERMAN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Marion County, Steven W. Guiter, District Associate Judge.

A defendant appeals her conviction for operating while intoxicated. **AFFIRMED.**

Tabitha L. Turner of Turner Law Firm, P.L.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, Edward Bull, County Attorney, and Ben Hayek, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

Laura Santoro-Peterman appeals her conviction for operating while intoxicated (OWI), in violation of Iowa Code section 321J.2(1)(a) and (b) (2011). Santoro-Peterman asserts there is insufficient evidence to support her conviction because her conduct indicating intoxication was not caused by alcohol consumption. We affirm the rulings of the trial court.

**I.      Background Facts and Proceedings**

On March 7, 2012, a citizen called the Pella Police Department and reported that an SUV needed to be "checked out." Officer Hektoen located the vehicle and initiated a traffic stop. The driver pulled over but continued to coast for approximately twenty yards before stopping, which Officer Hektoen stated was abnormal.

Upon approaching the vehicle, Officer Hektoen smelled the odor of an alcoholic beverage. The driver, identified by her license as Laura Santoro-Peterman, was unable to locate her proof of insurance and her registration, although Officer Hektoen observed her pass over her registration twice. Santoro-Peterman had bloodshot, watery eyes and slightly slurred speech, which she attributed to crying earlier in the night. The odor of an alcoholic beverage persisted after Officer Hektoen brought Santoro-Peterman back to his patrol car, where she admitted drinking approximately two glasses of wine sixty minutes prior to the stop.

Officer Hektoen administered the Horizontal Gaze Nystagmus test (HGN), which Santoro-Peterman struggled to complete because she was unable to

follow directions to keep her head still and follow his finger. She eventually registered four of six clues on the test, indicating she was impaired. No other field sobriety tests were performed because it was rainy and windy. He then administered a preliminary breath test (PBT), and Santoro-Peterman again failed to follow Officer Hektoen's directions. After several attempts, she registered a blood-alcohol content (BAC) above 0.08 at 8:44 p.m.[1]

Santoro-Peterman was arrested, taken to the police department, and read an implied consent advisory for future breath samples. Officers testified that this process took over thirty minutes because she had to be read the advisory several times and asked the same questions repeatedly. They ultimately determined she refused to consent to a breath sample given her inability to state whether she consented. Santoro-Peterman then asked to go to the hospital for an independent blood analysis, where a blood-alcohol test at 11:09 p.m. revealed her BAC was 0.049.[2]

The State charged Santoro-Peterman with OWI. A bench trial was conducted in August 2013. Officer Hektoen testified regarding the above events, which are largely undisputed. Other law enforcement personnel testified regarding their observations of Santoro-Peterman: that she appeared intoxicated, smelled of an alcoholic beverage, and was often confrontational and confused. Santoro-Peterman testified that she was confused throughout the night because

[1] The results of PBTs taken at the time of arrest are usually inadmissible, but Santoro-Peterman stipulated to admission of the results at trial.

[2] According to Officer Hektoen, an arrestee who refuses to consent to a breath test while in custody is not entitled to receive an independent blood test. Santoro-Peterman's request was granted by mistake.

she was pulled over following an emotional divorce mediation. An expert testified that extrapolating backwards from the 11:09 p.m. blood-alcohol test, a conservative estimate indicated that Santoro-Peterman's BAC was over 0.08 at the time she was pulled over. The court found Santoro-Peterman guilty. She appeals.

## II.    Sufficiency of the Evidence

"Sufficiency-of-the-evidence challenges are reviewed for correction of errors at law." *State v. Jorgensen*, 758 N.W.2d 830, 834 (Iowa 2008). The trial court's findings of guilt are binding if supported by "substantial evidence." *Id.* Evidence is substantial if it would "convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* In determining whether substantial evidence exists, "we view the evidence in the light most favorable to the verdict, including all reasonable inferences that may be deduced from the record." *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004). We defer to the trial court's factual findings and credibility determinations. *See State v. Jennings*, 195 N.W.2d 351, 357 (Iowa 1972).

A person commits the offense of OWI if the person operates a motor vehicle "[w]hile under the influence of an alcoholic beverage . . . [or] [w]hile having an alcohol concentration of .08 or more." Iowa Code § 321J.2(1)(a), (b). Our supreme court has explained "that a person is 'under the influence' when the consumption of alcohol affects the person's reasoning or mental ability, impairs a person's judgment, visibly excites a person's emotions, or causes a person to

lose control of bodily actions." *State v. Truesdell,* 679 N.W.2d 611, 616 (Iowa 2004); *see also* Iowa Crim. Jury Instructions 2500.5.

The trial court found each consideration fulfilled, but Santoro-Peterman asserts the evidence was insufficient on each ground. She sets forth several arguments, the crux of which is that her mental state was impaired because she spent the day at an emotionally-fueled divorce mediation, not because she consumed wine. Her son testified she did not appear intoxicated earlier. Additionally, she asserts she failed to follow directions during the HGN test because of the headlights of oncoming traffic, not because of intoxication, and she was confused when reviewing the implied consent advisory because of its contents, not because of intoxication. She contends nystagmus is naturally occurring, the presence of which does not indicate the consumption of alcohol, and she contends her BAC taken approximately three hours after the incident should not be utilized to calculate her BAC at the time of her arrest.

The State asserts Santoro-Peterman's confusion during the HGN test— and subsequent failure of it—was because she was under the influence of alcohol, as demonstrated by her PBT result of over 0.08 at the time of her arrest. Her 0.049 BAC three hours post-arrest, when extrapolated to the time of her vehicle stop, is evidence of her intoxication at the time she was operating her motor vehicle. Multiple police officers smelled the odor of an alcoholic beverage coming from Santoro-Peterman's person, and she had bloodshot watery eyes, slightly slurred speech, and was emotionally volatile. Finally, the State contends

Santoro-Peterman's failure to cooperate with the booking process and to generally follow directions generally indicates her judgment was impaired.

The trial court heard this evidence, watched the video of Santoro-Peterman's arrest and booking process, and made several factual findings, to which we give deference. *See Jennings*, 195 N.W.2d at 357. The trial court found Santoro-Peterman was operating a vehicle and had consumed alcohol prior to driving. The court found she was confused and generally unwilling or unable to follow directions throughout the evening. Indeed, she asked the same questions repeatedly. The court held she expressed a range of emotions throughout the evening, including crying, laughing, and anger. Finally, it found Santoro-Peterman was impaired according to the HGN test, she failed to follow directions during the HGN test, and her position in the car and passing traffic did not affect the HGN test. Because the court found Santoro-Peterman was driving under the influence of alcohol, it did not consider her BAC.

A rational fact finder could conclude that her confusion, inability to follow directions, failure of the HGN test, and admission she consumed two glasses of wine, along with the police testimony regarding the odor of an alcoholic beverage indicate Santoro-Peterman was under the influence of alcohol such that her mental ability was affected and she had lost control of her bodily actions.

Viewing the evidence in a light most favorable to the verdict, including all reasonable inferences that may be deduced from the record we determine substantial evidence existed for the trial court to find Santoro-Peterman was driving in violation of Iowa Code section 321J.2(1)(a) and (b). *See, e.g.,*

*Truesdell*, 679 N.W.2d at 616 (finding sufficient evidence for OWI conviction when defendant had acted abnormally, driven erratically, acknowledged consuming alcohol, and exhibited numerous signs of intoxication); *State v. Bernhard*, 657 N.W.2d 469, 473–74 (Iowa 2003) (finding sufficient evidence for OWI conviction when officers had not observed defendant's driving but blood test revealed a BAC over 0.08); *State v. Murphy*, 451 N.W.2d 154, 155 (Iowa 1990) (finding sufficient evidence for OWI conviction despite the defendant's friends testifying he was not intoxicated and the fact he did not take a breath test, when the evidence showed he failed the HGN and other field sobriety tests, was driving abnormally, and smelled of an alcoholic beverage).

## II.    Conclusion

We agree with the district court's factual findings and determine, due to Santoro-Peterman's confusion, her inability or unwillingness to follow directions, her conduct during the HGN test and her failure of that test, along with her admission to consuming alcohol and the testimony from the officers that she smelled of an alcoholic beverage, there was substantial evidence Santoro-Peterman was driving under the influence of alcohol. Accordingly, we affirm.

**AFFIRMED.**