# IN THE COURT OF APPEALS OF IOWA

No. 17-1179
Filed August 1, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARCO IMANUEL MARTINEZ,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Muscatine County, John D. Telleen,

Judge.


        Marco Martinez appeals his conviction for criminal mischief in the second

degree. **AFFIRMED.**


        Nathan M. Legue of Legue Law, P.C., Davenport, for appellant.

        Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney

General, for appellee.


        Considered by Vogel, P.J., Tabor, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**VOGEL, Presiding Judge.**

Marco Martinez appeals his conviction for criminal mischief in the second degree. He argues the evidence is insufficient to support his conviction and the district court abused its discretion when it admitted a photograph as evidence. We affirm the conviction.

## I.      Background Facts and Proceedings

On the morning of February 13, 2017, George and Barbara Pinter were asleep inside their home in a rural subdivision in Montpelier, Iowa. Around 1:30 or 2:00 a.m., Barbara was awakened by a strange noise, but she soon fell back asleep. When they woke for the day a few hours later, they realized a bullet had gone through their master bedroom. Later that day, law enforcement officers noted four bullet holes in the front of the house facing the road. Officers found five shell casings on that road and an intact bullet in the bedroom, all of which came from .22 caliber ammunition. The casings were spread across the ground, which suggests they were ejected one-by-one from a semi-automatic weapon. The casings had a large "C" stamped in their base, which is synonymous with CCI brand ammunition. The bullets caused a little more than $2000 in damage to the Pinters' house.

Later that day, law enforcement officers searched a house several miles away in Muscatine. Officers performed an initial protective sweep, a consent search, and, ultimately, a search pursuant to a warrant. During the consent search, Officer Andy Fry and Detective John Hesseling, both with the Muscatine Police Department, found a backpack, a loaded firearm, and some adult diapers on the floor of a bedroom closet. The backpack contained a partial box of .22

caliber CCI brand ammunition. The firearm was a semi-automatic .22 caliber pistol. Based on prior interactions, Officer Fry knew Marco Martinez wore adult diapers. Detective Hesseling acknowledged he did not know who lived in the bedroom attached to the closet.

Martinez was not known to be an owner of the Muscatine house, and Officer Fry did not believe he lived at the house at the time. Martinez was one of six persons at the house when officers arrived. During the search, Martinez chose to remain in the house's backyard and converse with a detective. Martinez said he had a birth defect and showed the detective the surgical scars on his abdomen and the adult diaper he wore because of the defect. The detective told Martinez they had found ammunition and adult diapers inside the house, at which point Martinez said he did not want to talk anymore.

The State charged Martinez with criminal mischief in the second degree. He proceeded to a jury trial beginning June 5, 2017. During trial, the State offered a photograph of the closet in the Muscatine house and its contents as evidence. Martinez objected to the photograph because it did not show the condition of the closet when officers arrived. While Officer Fry and Detective Hesseling both testified about the closet, Officer Fry acknowledged another officer had unloaded the firearm according to protocol before taking the photograph, and Detective Hesseling acknowledged he was not the first person to search the closet. The court admitted the photograph.

The State also presented testimony from Brennen Salmieri. According to his testimony, Salmieri drove to a motel in Muscatine on the night of February 12 or early February 13 to pick up a friend, Martinez, and another man. He did not

know Martinez or the other man at the time. Salmieri then drove the four of them around the area, with his friend in the front-passenger-side seat, Martinez in the rear-driver-side seat, and the other man in the rear-passenger-side seat. At one point, he drove on the road past the Pinters' house, though he did not know the area or the street names until investigators later showed him a map. He then heard gunshots from both rear windows, including one gunshot from Martinez directly behind him. He believed both men had fired guns out of the rear windows, but he never saw the guns and the men had their hands in their laps when he turned around to look. He soon returned everyone to the motel. At trial, he acknowledged he was currently in jail for his actions that morning. He did not have an agreement with the State to testify, though he was told his testimony would be taken into consideration in resolving his case.

The jury found Martinez guilty of criminal mischief in the second degree. The court sentenced him to a term of incarceration not to exceed five years plus a suspended fine, restitution, and surcharge. Martinez now appeals his conviction.

## II. Standard of Review

We review insufficient-evidence claims for errors at law, and we will affirm if the evidence, when viewed in the light most favorable to the State, "can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Wickes*, 910 N.W.2d 554, 564 (Iowa 2018). We review evidentiary rulings for abuse of discretion. *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017).

## III. Insufficient Evidence

Martinez argues the evidence is insufficient to convict him of criminal mischief in the second degree. "Any damage, defacing, alteration, or destruction

of property is criminal mischief when done intentionally by one who has no right to so act." Iowa Code § 716.1 (2017). Criminal mischief is in the second degree if the cost to replace, repair, or restore the damaged property is greater than $1000 but less than $10,000. *Id.* § 716.4(2).

Martinez focuses on the evidence showing he fired the weapon that caused the damage to the Pinters' house. Salmieri testified that Martinez fired a weapon as they drove near the Pinters' house at the time in question. Martinez was at the Muscatine house when officers searched it later that day, and he chose to remain near the house during the search. Inside the house, officers found in close proximity (1) ammunition matching the caliber and manufacturer of the ammunition used at the Pinters' house, (2) a loaded firearm capable ejecting the casings found outside the Pinters' house, and (3) adult diapers of the type officers knew Martinez wore. Taking this evidence in the light most favorable to the State, a reasonable jury could accept Salmieri's testimony, decide Martinez remained at the Muscatine house because he wanted to know what officers found in the search, and conclude he fired the weapon found inside the closet of the Muscatine house at the Pinters' house.

Martinez notes the absence of physical evidence directly linking him to the crime, such as fingerprints or gunshot residue. He also notes problems with Salmieri as a witness, including his testimony that he only heard one gunshot from Martinez's side of the car, his uncertainty of the street names around the Pinters' house, and his hopes the State would consider his testimony when resolving any charges against him. The factfinder's role is to determine the credibility of witnesses, and the jury was free to accept Salmieri's testimony in whole or in part.

*See State v. Harrington*, 178 N.W.2d 314, 315 (Iowa 1970). Also, physical evidence is not necessarily required for conviction. *See* Iowa R. App. P. 6.904(3)(p) ("Direct and circumstantial evidence are equally probative."). As explained above, when taking the evidence as a whole in the light most favorable to the State, the evidence is sufficient to support Martinez's conviction for criminal mischief in the second degree.

### IV. Admission of a Photograph

Martinez next argues the district court abused its discretion in admitting a photograph of the bedroom closet in the Muscatine house over his objection. He asserts the State failed to lay a proper foundation for the photograph because it did not reflect the condition of the closet when officers first arrived.

> To obtain admission of a photograph into evidence, (1) the picture must be relevant to the controversy, which normally requires that the picture be identified in time and place, and (2) the picture must fairly represent what it shows. Conventionally these foundation elements are shown by the direct testimony of a person who, although perhaps not connected with the photography, observed the scene and testifies that the picture fairly shows it, or who describes the photographic process employed and testifies it produces accurate pictures.

*State v. Holderness*, 293 N.W.2d 226, 230 (Iowa 1980) (citations omitted).

Officer Fry and Detective Hesseling both testified the photograph fairly and accurately depicted the condition of the closet during the search. Both acknowledged officers had searched the closet before the picture was taken; in particular, Officer Fry testified the searchers had moved the firearm from its initial location and cleared its round before the picture was taken. This testimony provides a proper foundation to admit the photograph. *See id.* Martinez's assertions go to the photograph's evidentiary weight, which is for the factfinder to

decide. *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive."). Therefore, the district court did not abuse its discretion in admitting the photograph.

## V.    Conclusion

Substantial evidence supports Martinez's conviction for criminal mischief in the second degree, and the district court did not abuse its discretion in admitting a photograph depicting a bedroom closet during a search. Therefore, we affirm.

**AFFIRMED.**